RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0339P (6th Cir.)
File Name: 03a0339p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

SILAS MCADOO,
　　　*Petitioner-Appellant,*

　　　*v.*　　　　　　　　No. 01-2050

FRANK ELO, Warden
　　　*Respondent-Appellee.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 98-74705—Paul D. Borman, District Judge.

Argued: February 5, 2003

Decided and Filed: September 23, 2003

Before: GILMAN and GIBBONS, Circuit Judges;
POLSTER, District Judge.*

———————————

**COUNSEL**

**ARGUED:** James R. Gerometta, FEDERAL PUBLIC
DEFENDERS OFFICE, Detroit, Michigan, for Appellant.

---

* The Honorable Dan Aaron Polster, United States District Judge for
the Northern District of Ohio, sitting by designation.

Debra M. Gagliardi, OFFICE OF THE ATTORNEY
GENERAL, CORRECTIONS DIVISION, Lansing,
Michigan, Appellee. **ON BRIEF:** James R. Gerometta,
FEDERAL PUBLIC DEFENDERS OFFICE, Detroit,
Michigan, for Appellant. Debra M. Gagliardi, OFFICE OF
THE ATTORNEY GENERAL, CORRECTIONS DIVISION,
Lansing, Michigan, Appellee.

———————————

**OPINION**

———————————

JULIA SMITH GIBBONS, Circuit Judge. Silas McAdoo
appeals the district court's denial of his petition for a writ of
habeas corpus. McAdoo pled guilty in Michigan state court
to one count of second-degree murder and two counts of
assault with intent to commit murder. Pursuant to a plea
agreement, he was sentenced to three life sentences to run
concurrently. McAdoo later claimed that his attorney
misinformed him about the consequences of a life sentence.
McAdoo raises three issues in this appeal, arguing that (1) his
guilty plea was not knowing and voluntary because he
misunderstood its consequences, (2) his plea was illusory
based on the effective unavailability of parole for those
serving a statutory life sentence, and (3) his trial counsel was
ineffective for allegedly misinforming McAdoo about his
possible sentence. For the following reasons, we affirm the
district court's denial of habeas relief.

## I.

McAdoo was charged in Michigan state court with one
count of first-degree murder and two counts of assault with
intent to commit murder. The charges arose from the
stabbing death of McAdoo's wife, Alicia Kelley, and the
stabbing of two of his daughters. At McAdoo's preliminary
hearing, his ten and fourteen year old daughters testified

about the facts of McAdoo's offenses, all of which occurred in the family home.

On January 9, 1995, the trial date, McAdoo entered a guilty plea to the lesser offense of second-degree murder and two counts of assault with intent to commit murder. The agreement was in exchange for the dismissal of the first-degree murder charge that carried a maximum sentence of life without parole. At the plea proceeding, McAdoo's attorney told the court that the plea agreement indicated three life sentences. McAdoo signed the plea form, which stated that the agreement was for three life sentences. McAdoo stated to the court under oath that no one had promised him anything other than what the plea form indicated.

Sentencing was held on February 1, 1995. At the outset, McAdoo's attorney stated that McAdoo did not want to withdraw his plea, and McAdoo agreed on the record. The court stated that it was ready to "impose a sentence in accord with the sentence agreement." It then sentenced McAdoo to parolable life for the murder conviction and two concurrent terms of twenty years imprisonment for the assault convictions. The sentencing judge stated "Count one and murder two for a term of statutory life which is 20 years." Although the judge indicated an intent to sentence McAdoo in accord with the plea agreement, she failed to do so. First, a statutory life term does not equal twenty years in Michigan. Second, the plea agreement did not call for twenty-year sentences for the assault convictions.

The prosecution then moved to amend the sentence to conform to the plea agreement, which had provided for three concurrent life sentences rather than one life sentence and two twenty-year sentences. Resentencing occurred on March 24, 1995. McAdoo, then represented by his second counsel, Robert Plumpe, requested the withdrawal of his guilty plea, claiming that he did not understand the nature of his plea agreement and that he was under the influence of medication at the time he entered his plea. Defense counsel argued that

there was confusion when McAdoo entered his plea about what the sentence would be. The prosecutor responded that there was some confusion at sentencing, "but not at plea time."

At the resentencing hearing, McAdoo, who was not under oath, had the following exchange with the state trial court:

THE COURT: Mr. McAdoo, sir, do you wish to say anything before this Court imposes the correct sentence, which was pursuant to the plea agreement?

DEFENDANT McADOO: Yes, Judge Braxton. The day that you accepted my plea, I don't know if you remember. I know you have a lot of cases that you have to do, but when Batchelor first came before you with me, and you asked me more than once did I understand, and you asked me how did I plead, and I pled not guilty.

Then he took me, and we went into the back chambers or in another room, and he made the statement to me, and maybe I am wrong, but I was told that the three life sentences would be 20, 20, 20 to run concurrently, and that my kids would not have to be subjected to the Court.

THE COURT: But he did inform you that they were three life sentences. Is that correct?

DEFENDANT McADOO: Yes, Ma'am.

THE COURT: Which is indicated on this form.

MR. DEFENDANT: But he, I guess what I am trying to say is, Judge Braxton, that if I had understood what he was telling me which, as I stated to you before, I had no knowledge of what was going on whatsoever. I have no –

THE COURT: Now you had some knowledge because I spoke to you. But you go ahead.

DEFENDANT McADOO: What I am trying to say is my lawyer, Batchelor, he never spoke with me about anything. It was just the first time I ever saw this piece of paper here was the day that you took my plea agreement. When I first saw you, and it was more or less stated to me accept it or get another attorney. I wrote all this up, and I turned it in to the Grievance Commission.

But anyway to sum it all up, he told me something that was different than what you did, and that's the only thing I am arguing, and is the fact that I didn't understand what he was doing. If I would have understood that he was sentencing me to three life sentences to the point, why not fight the case?

I didn't want my kids to be subjected to it. It was enough that they went through. And then for him to tell me that it would be the three life sentences, I know I need to be punished for what I did. No problem whatsoever with that. But that's not what he explained to me. That's all I am trying to say to the Court.

The court then conformed the sentence to the written plea agreement and stated that it would consider McAdoo's motion to withdraw the plea if he presented evidence that his mental state and medication prevented him from knowingly entering a guilty plea.[1]

---

[1] On May 4, 1995, the court conducted a hearing on that issue. Dr. Keith Dlugokinski, a psychologist from the prison where McAdoo was incarcerated, testified that McAdoo was suffering from major depression and was being medicated at the time he entered his plea. However, Dlugokinski also testified that McAdoo's medications would not have significantly impaired his cognitive abilities. Although no order denying the motion to withdraw the plea appears in the record, it is evident that the court denied the motion. The issue of McAdoo's psychological state and medications has not been raised in this appeal.

McAdoo was then appointed a third counsel, Edward Jabbour, who filed another motion to withdraw McAdoo's guilty plea, arguing that the plea was not knowing and voluntary. The sentencing court held a hearing on this motion on March 7, 1996. Jabbour argued that McAdoo entered his plea believing that he would be released after twenty years imprisonment and that this alleged misunderstanding nullified the plea.

The court conducted an evidentiary hearing on May 9, 1996, to determine whether McAdoo's alleged misunderstanding nullified his plea. At the May 9, 1996, hearing, Batchelor testified that his understanding was that the penalty for first-degree murder in Michigan was a sentence of "natural life" and the penalty for second-degree murder was a sentence of "parolable" life. He testified that he was familiar with the "Lifer Law,"[2] which would have governed McAdoo's possibility of parole. When asked what his understanding of the "Lifer Law" was, Batchelor stated, "in terms of what I remember in discussion with Mr. McAdoo with regards to the Lifer Law, we never discussed it." When asked whether he had said anything to McAdoo about what a sentence of life imprisonment means, Batchelor responded, "I don't recall saying anything to him about life imprisonment."

McAdoo presented the testimony of Michael Patrick Martin, prisoner advocate for the Wayne County jail at the time of McAdoo's incarceration there, and Mark Carrico of

---

[2] The "Lifer Law," M.C.L. § 791.233b; M.S.A. § 28.303(3) provides that prisoners convicted of an enumerated offense (such as second-degree murder) are not eligible for parole until the prisoner has served the minimum term less available disciplinary credits. *People v. Lino*, 539 N.W.2d 545, 549 (Mich. Ct. App. 1995), *overruled on other grounds by People v. Carson*, 560 N.W.2d 657, 665 (Mich. Ct. App. 1996). In McAdoo's case, the "Lifer Law" would have meant that he was likely to be eligible for parole after serving approximately fifteen years. *Lino*, 539 N.W.2d at 548-49 (defendant serving parolable life sentence for crime committed on or after October 1, 1992, is subject to the jurisdiction of the parole board and eligible for parole after fifteen years imprisonment).

the Team for Justice, who visited McAdoo after his incarceration. Jabbour asked Martin if McAdoo told him about the sentence agreement contained in the plea agreement. The prosecution objected to this evidence as hearsay. Jabbour argued that the evidence was "state of mind" testimony, but the court sustained the objection. Jabbour attempted to elicit the same information from Carrico that he had from Martin. Carrico stated that, at some unspecified time before McAdoo was transferred to a state prison to serve his sentence, McAdoo told Carrico he would "get out in 17 years." Jabbour then asked the court to rule that if McAdoo testified, he could not be questioned about the underlying facts of the offense. The court ruled that McAdoo could be questioned about any facts that were relevant to the motion to withdraw the plea. McAdoo did not testify.[3]

At the close of the hearing, the court denied McAdoo's motion to withdraw his guilty plea, concluding:

If I look at the testimony and my view of the witnesses that testified this afternoon, he stated – Mr. Carrico stated he met the defendant back in 1994, and that the defendant's mother called him because he's a member of the Team for Justice. He further testified that he visited weekly with the defendant before he was sent to Jackson [prison], and Mr. Carrico also testified he was at the sentencing. Mr. Carrico further testified that defendant told him he would be eligible for parole in 17 years. That'[s] what your witness means to the understanding the defendant had at that time.

---

[3]McAdoo later stated in an affidavit filed in the district court that Batchelor had told him that a "life sentence" in Michigan was the equivalent of a twenty-year sentence and that he would be paroled in approximately seventeen-and-a-half years. Because this affidavit was not part of the record before the state court, we do not consider it in assessing whether the state court's decision to deny McAdoo's motion to withdraw his plea was objectively unreasonable.

Upon questioning Mr. Batchelor, he indicated there was, in fact, a plea bargain that was made on the day of trial. He testified further that he, being Mr. Batchelor, was of the opinion that the plea offered the defendant would give him a better opportunity to put his client in the best possibl[e] posture that he could be in, and he made it know[n] to his client what his options were at the time . . .

This Court, after listening to the witnesses and the testimony that was presented in terms of the defendant's state of mind, the defendant stated it was his understanding he would be parolable in 17 years which, in fact, is the truth. And this Court, when taking a plea from any defendant as best as I can recall, I'm very meticulous in terms of whether or not the defendant has an understanding of what it is he's doing. Of course, I cannot and I do not go behind the scene to ask questions as to w[he]ther or not--what the defendant's particular understanding is of what a certain word means to a particular defendant. That I do not do. So, based upon the testimony I've heard, I deny the defendant's motion.

Following denial of his second motion to withdraw his guilty plea, McAdoo filed a delayed application for leave to appeal to the Michigan Court of Appeals. This application was denied for lack of merit in the grounds presented. McAdoo then filed a delayed application for leave to appeal to the Michigan Supreme Court, which was denied.

McAdoo then filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. On June 18, 2001, the district court entered an order denying the petition for habeas corpus. McAdoo was granted a certificate of appealability with respect to his claims that his plea was involuntary, that his

plea was illusory, and that his defense counsel was ineffective in advising him about the consequences of his plea.[4]

## II.

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this case. Under 28 U.S.C. § 2254(d), a federal court may not grant habeas relief unless the adjudication in the state court proceedings:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under AEDPA, "[a] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams v. Taylor*, 529 U.S. 362, 411 (2000). Rather, the issue is whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409.

A federal court is to apply a presumption of correctness to state court findings of fact for habeas corpus purposes unless clear and convincing evidence is offered to rebut this presumption. 28 U.S.C. § 2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). The appeals court gives complete deference to the federal district court's and state court's findings of fact supported by the evidence. *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994). Trial court

---

[4] A certificate of appealability was denied on McAdoo's claim that his attorney was ineffective for failing to pursue a diminished capacity defense.

errors in state procedure and/or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment. *Estelle v. McGuire*, 502 U.S. 62, 69-70 (1991).

## III.

### A.

We apply the standards of AEDPA to McAdoo's three claims. His first contention is that his guilty plea was not knowing and voluntary because he was misinformed by his attorney about the consequences of his plea. Although McAdoo acknowledges that he was aware that he was receiving a life sentence, he argues that he misunderstood the implications of a life sentence because of erroneous statements made to him by his lawyer and that the state court finding otherwise was objectively unreasonable.

The Supreme Court has held that a defendant must have "sufficient awareness of the relevant circumstances and likely consequences" of his plea. *Brady v. United States*, 397 U.S. 742, 748 (1970). A guilty plea must be accompanied by "an affirmative showing that it was intelligent and voluntary." *Boykin v. Alabama*, 395 U.S. 238, 242 (1969). Such a showing is generally made by the government's production of a transcript of state court proceedings to establish that the plea was made voluntarily. *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993).

Prior to entering his plea, McAdoo signed the Pretrial Settlement and Notice of Acceptance, which indicated that the sentence for each of the three offenses would be life imprisonment. When entering the plea, McAdoo stated under oath that he understood the terms of the plea agreement and that he knowingly and voluntarily entered into the agreement. McAdoo also testified that no additional promises, other than

those contained in the plea agreement, had been made to him. Shortly before McAdoo entered his plea, his attorney stated to the court that the plea agreement called for three life sentences and that he had discussed the agreement with McAdoo. The attorney also stated that he had explained McAdoo's constitutional rights to him and McAdoo had indicated his understanding.

McAdoo does not contend that the plea colloquy was inadequate. He acknowledges that he knew he was agreeing to a life sentence. His argument is rather that there was confusion about the consequences of a parolable life sentence in Michigan at the time and that he relied on the alleged out-of-court statements of his attorney. In further support of the existence of confusion, he cites the statement of the judge at sentencing that he would receive "a term of statutory life which is 20 years" and the attorneys' silence after that statement. [5]

McAdoo contends that his case is analogous to *Hart v. Marion Correctional Institution*, 927 F.2d 256 (6th Cir. 1991). In *Hart*, the state trial judge and Hart's attorneys incorrectly informed him that his maximum period of incarceration would be fifteen years if he pled guilty. The maximum was actually seventy-five years. This court stated:

> This record shows that the court informed Hart he could
> be sentenced from 60 to 150 years. The court

---

[5] McAdoo also attempts to show confusion about the consequences of a parolable life sentence by submitting evidence that the State Bar of Michigan addressed the issue of the consequences of a life sentence at an annual meeting in September 2000, some five and a half years after McAdoo entered his guilty plea and some four and a half years after his state evidentiary hearing. Evidence about this meeting obviously was not a part of the record considered by the state court. In any event, statements at the annual meeting tend to show that there was confusion about the likelihood of parole for prisoners sentenced to parolable life, but they do not indicate that it was reasonable to believe that a life sentence in Michigan meant anything other than what its name implies.

immediately qualified that information by adding that the maximum period he could serve for the sentence would be 15 years. Nowhere does the record show that Hart was informed before entering his plea of the true sentence, a minimum of 30 years and a maximum of 75. He was informed by the court of this range at his sentencing hearing, but again at the hearing, the court stated that under Ohio law he would only serve 15 years of the sentence. . . . Although this statement occurred after Hart entered his plea, it is evidence that the trial judge himself did not understand the consequences of the plea agreement and, accordingly, did not give Hart correct information on the consequences of his plea.

*Id.* at 258. This case differs from *Hart* in that McAdoo was aware he was receiving a life sentence. Unlike the court in *Hart*, the state court in this case made its sole misstatement at the sentencing, only *after* the plea had been entered and accepted. Any misstatement by the judge at sentencing could not possibly have affected McAdoo's understanding at the time he entered his plea, the relevant time for our inquiry.

After an evidentiary hearing about whether McAdoo's plea was entered knowingly, the state court found that his alleged misunderstanding did not invalidate the plea. The state court accepted as true McAdoo's evidence (in the form of Carrico's testimony) that he believed he would be paroled in seventeen years. This evidence, however, does not show that his plea was unknowingly entered, as the state court correctly found. *See Hill v. Lockhart*, 474 U.S. 52, 56 (1985) ("We have never held that the United States Constitution requires the State to furnish a defendant with information about parole eligibility in order for the defendant's plea of guilty to be voluntary."); *James v. Cain*, 56 F.3d 662, 666 (5th Cir. 1995) ("The United States Constitution does not require the State to furnish a

defendant with information about parole eligibility in order for the defendant's plea of guilty to be voluntary.").[6]

McAdoo's argument that at the time of his guilty plea there was confusion in Michigan about the consequences of a parolable life sentence is intertwined with an argument that the state court made erroneous evidentiary rulings at the hearing on his request to withdraw his plea.[7] First, McAdoo contends that the state court erroneously excluded Martin's "state of mind" testimony. Second, he contends that the state court's incorrect ruling that, if McAdoo testified, he could be cross-examined about the underlying facts of the case forced him to elect not to testify.[8] Whatever the merit of these evidentiary arguments, the state court's evidentiary rulings

---

[6] As a practical matter, any information given to a defendant about parole at the time he pleads guilty is inherently imprecise. Both parole eligibility and likelihood are unpredictable. A number of factors, such as the earning of sentence credits, may affect the time at which a prisoner becomes eligible for parole. Furthermore, factors such as the crimes of conviction, the entire criminal record, and behavior in prison may impact the likelihood of parole at a particular time after a prisoner becomes eligible for parole. The likelihood of parole is also affected by changes in the law and in the composition and attitudes of parole board members. *See James*, 56 F.3d at 666 (noting that changes in Louisiana's commutation procedures made parole more difficult to attain). As McAdoo's evidence of the 2000 Michigan bar meeting suggests, the fact that few Michigan prisoners sentenced to parolable life are paroled when they are first eligible is attributable to a "political shift." An assessment of the likelihood that McAdoo will be paroled when he becomes eligible in 2010 would have been speculative in 1995 when he pled guilty and is speculative today, because there is no means of ascertaining future parole board policy or other relevant factors.

[7] McAdoo does not claim that these evidentiary rulings made the proceedings so fundamentally unfair as to deprive him of due process.

[8] McAdoo's description of the state court ruling is not precisely accurate. While certainly the state court left open the possibility of such cross-examination, it did so only to the extent an underlying fact might be relevant to the motion to withdraw the plea.

---

did not affect the outcome of the state hearing. The state court heard testimony from Carrico that McAdoo believed that he would be eligible for parole in seventeen and a half years. It accepted that testimony as truthful and also determined that McAdoo's belief was consistent with his actual date of parole eligibility under Michigan law.

McAdoo attempts to characterize his misunderstanding about the consequences of his sentence of parolable life as a misunderstanding about more than his parole eligibility date or the likelihood of parole. He argues that he in fact thought a life sentence meant a twenty-year sentence. Although McAdoo presented no evidence of this belief to the state court, at resentencing (in an unsworn statement during his allocution), he told the state court that Batchelor told him that "the three life sentences would be 20, 20, 20 to run concurrently."

In *Ramos v. Rogers*, 170 F.3d 560 (6th Cir. 1999), the defendant attempted to withdraw his guilty plea after sentencing. While accepting his plea, the state trial court asked Ramos whether he understood that he was not going to receive probation under any circumstances. *Id.* at 562. Ramos responded that he understood. Later, he attempted to withdraw his guilty plea, arguing that his lawyer had actually promised him that he would receive "supershock probation." *Id.* at 562-63. On appeal, Ramos contended that he was told only that he was ineligible for probation, but not that he was ineligible for supershock probation. *Id.* at 563. He testified that he did not know the difference between supershock probation and "regular" probation. *Id.* The court was not persuaded by the argument that the individual defendant's misunderstanding of a commonly used term rendered his plea void. It held that "such word games cannot be permitted to vitiate the use of simple words in court." *Id.* at 565 n.6. Ramos essentially asked the court to rely on his subjective impression of the words used, garnered from his lawyer's misstatements, rather than the plain meaning of the statements made in court. This court declined to do so:

If we were to rely on Ramos's alleged subjective impression rather than the record, we would be rendering the plea colloquy process meaningless, for any convict who alleges that he believed the plea bargain was different from that outlined in the record could withdraw his plea, despite his own statements during the plea colloquy . . . indicating the opposite. This we will not do, for the plea colloquy process exists in part to prevent petitioners such as Ramos from making the precise claim that is today before us. Where the court has scrupulously followed the required procedure, the defendant is bound by his statements in response to that court's inquiry.

170 F.3d at 566 (internal quotation marks omitted).

The present case presents a closer question than *Ramos*. However, as in *Ramos*, we hold that a term that is unambiguous on its face and agreed to by the defendant in open court will be enforced. *See Hall v. Maggio*, 697 F.2d 641, 643 (5th Cir. 1983) (*per curiam*) (holding that defendant's misunderstanding about life sentence, based on "common knowledge" and attorney's misadvice, did not invalidate plea). We note that the term "life sentence" is not ambiguous. The United States Constitution does not require judges to explain the meaning of "life sentence" and other unambiguous terms during the plea colloquy in order to combat alleged misinformation that is not revealed on the record. *Cf. Boykin*, 395 U.S. at 243-44 (requiring explicit waiver of certain constitutional rights on the record when court takes guilty plea); *United States v. Hanley*, 906 F.2d 1116, 1121 (6th Cir. 1990) (holding that defendant was not entitled to relief on his claim of ineffective assistance of counsel where his counsel incorrectly advised him that he would be eligible for parole in a third of the time he received for a sentence because the court informed the defendant of the potential range of incarceration for his crime and advised him that he would be sentenced under the guidelines); *see also* Fed. R. Crim. P. 11(b) (setting forth the elements the federal court must address when considering and accepting guilty

pleas). McAdoo acknowledged in court under oath that he was agreeing to a life sentence, and the evidence and his unsworn statement presented to the state court failed to show that he reasonably believed he was actually agreeing to a maximum sentence of only twenty years.

Therefore, the state court did not err in finding that McAdoo understood the consequences of his plea. The state court's findings are entitled to considerable deference under AEDPA. A federal court may grant habeas relief only where the state court proceeding "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d). Considering the record here, we cannot say that the state court's determination that McAdoo knowingly and voluntarily entered his plea was unreasonable.

## B.

McAdoo next contends that his plea bargain was illusory because he obtained no real benefit from entering a guilty plea. The Michigan Parole Board rarely grants parole to prisoners sentenced to parolable life, as explained by the Michigan Court of Appeals in *People v. Lino*:

The reality is that those who receive nonmandatory life sentences are rarely paroled after ten years, and, in fact, the majority of defendants sentenced to life imprisonment are *never* granted parole. . . . [F]rom 1986 through 1990, only seven prisoners serving parolable life sentences were paroled. Of the 975 prisoners serving such a term in 1990, only two were paroled. In 1991, only one prisoner serving a parolable life term was paroled. In 1992, again only one prisoner serving a parolable life term was paroled.

539 N.W.2d at 549 (citations omitted). In view of these statistics, McAdoo argues that his "promised benefit will not materialize." He argues that he is entitled to a new trial or a

second chance to negotiate a plea bargain because he "expected he would be released on parole given the information he received concerning the workings of parole in Michigan."

This argument fails, however, because McAdoo did obtain his bargained-for benefit, the possibility of parole. Under Michigan law, a defendant convicted of first-degree murder faces a sentence of mandatory non-parolable life while second-degree murder carries a sentence of parolable life or any term of years. Pursuant to his plea agreement, McAdoo was sentenced to three concurrent terms of parolable life. It was not necessary for the prosecutors or the court to explain the likelihood of parole to McAdoo. *Hill*, 474 U.S. at 56. A defendant's mere expectation about the parole process is "simply no ground for habeas relief." *James*, 56 F.3d at 667. As the district court stated, "the relative reluctance of the Michigan Parole Board to grant parole to prisoners sentenced to life does not render his plea illusory." We hold that McAdoo derived a benefit by avoiding a trial on the first-degree murder charge which was punishable by life without parole and receiving instead a sentence of life with the possibility of parole. As such, his plea was not illusory.

## C.

Finally, McAdoo claims that his counsel, Batchelor, was constitutionally ineffective for allegedly misinforming him of the consequences of his plea. He requests that this issue be remanded for an evidentiary hearing.

McAdoo presented his ineffective assistance of counsel claim in his application for leave to appeal in both the Michigan Court of Appeals and Michigan Supreme Court. Neither court discussed the merits of the issue, and both denied leave to appeal in orders of one sentence. When a state court declines to address the merits of a properly raised issue, this court conducts an independent review of the issue. *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000) (requiring

federal court to undertake independent review of state court decision when state court decides claim without explanation of its decision). The independent review is not, however, "a full, *de novo* review of the claims, but remains deferential because the court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA." *Id.* at 943. Thus, the independent review determines whether the state court decision is contrary to federal law, unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented. *Id.*

The Supreme Court has adopted a two-pronged test for determining whether a defendant received adequate assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, a defendant must show that counsel's performance was deficient, which "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. The reviewing court should "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Second, a defendant must show that counsel's deficient performance prejudiced the defendant. *Id.* at 687. In order to satisfy the "prejudice" requirement in a plea agreement context, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 58-59.

McAdoo's argument that his counsel was ineffective is closely tied to his argument that his guilty plea was not knowing and voluntary. With respect to the ineffective assistance issue, his brief to this court states that he should receive an evidentiary hearing because the district court erroneously relied on the state court's finding that McAdoo understood the amount of prison time that he would be required to serve. McAdoo's reply brief simply states that the district court erred in accepting the findings of the state trial

court because McAdoo was denied a full and fair hearing on the issue. His brief in the district court states that the incorrect advice establishes deficiency of performance, as a result of which he entered a plea that was not knowing and voluntary, and "that fact establishes the prejudice prong."

Considerable case law supports a determination that giving erroneous advice about parole may constitute deficient performance. Affirmative misstatements about parole possibilities are more objectively unreasonable than failure to inform the defendant about the parole possibilities. *James*, 56 F.3d at 667 (noting that "this Court and others have recognized that affirmatively erroneous advice of counsel as to parole procedure is much more objectively unreasonable than would be a failure to inform of parole consequences"). When defense counsel grossly misinforms a defendant about details of parole and the defendant relies on that misinformation, the defendant may have been deprived of his constitutional right to counsel. *See Strader v. Garrison*, 611 F.2d 61, 65 (4th Cir. 1979). In *Meyers v. Gillis*, 142 F.3d 664 (3d Cir. 1998), a habeas petitioner argued that his counsel was ineffective for giving him incorrect advice about parole eligibility. The Third Circuit granted habeas relief, stating that "Meyers did not realize he was, in all reality, pleading guilty to an offense that did not allow him to receive parole in the future." *Id*. The court noted that while a defendant does not have a constitutional right to be provided with parole eligibility information prior to entering a plea, any information that is provided by defense counsel must be accurate. *Id*. at 667 n.2. McAdoo argues that Batchelor was ineffective because he allegedly gave McAdoo incorrect information regarding the terms of the plea agreement. He claims that Batchelor told him that he would serve at most twenty years in prison.[9] Assuming McAdoo's claim to be

_____

[9] At his state evidentiary hearing, McAdoo's counsel did not specifically ask Batchelor whether he made this statement to McAdoo. Batchelor, however, implicitly denied the statement by saying that he and

true, his argument that his counsel's performance was deficient may have merit.

McAdoo's ineffective assistance claim fails in any event, however, because it would not have been unreasonable for the state courts to conclude that he had failed to establish prejudice had they included an analysis of the ineffective assistance issue in their opinions. The prejudice prong of *Strickland* requires McAdoo to show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have gone to trial.

McAdoo's exchange with the state judge at resentencing is at best ambiguous. While he suggested that he might have fought the case if he had known he would serve a life sentence, he also said that he did not want his children to be subjected to a trial. Prior to this time McAdoo had been present at the preliminary hearing and was aware that the evidence against him, which included his daughters' testimony, was overwhelming, a fact that the state courts were entitled to take into account in determining whether he would have pled guilty in the absence of any erroneous advice rather than going to trial on first degree murder charges. McAdoo also conceded that Batchelor and the court informed him that he would receive three life sentences. He signed the plea form indicating three life sentences. Moreover, Batchelor testified that he did not discuss the Lifer Law with McAdoo.

Given this record, the state courts were not unreasonable in rejecting McAdoo's ineffective assistance claim. While they could have concluded that McAdoo had established a reasonable probability that he would not have pled guilty in the absence of erroneous advice, it also would not have been unreasonable for them to conclude otherwise. Thus, after independent review, we conclude that the state court's

_____

McAdoo did not discuss the Lifer Law. McAdoo, as previously noted, did not testify.

decision was not contrary to federal law, did not unreasonably apply federal law and was not based on an unreasonable determination of the facts. *See Harris*, 212 F.3d at 943.

McAdoo requests an evidentiary hearing on the ineffective assistance of counsel issue and argues that he did not receive a "full and fair" hearing in state court. Under AEDPA, a defendant who "failed to develop the factual basis of a claim in State court proceedings" cannot obtain an evidentiary hearing unless he satisfies two statutory exceptions not applicable here. 28 U.S.C. § 2254(e)(2). However, when a defendant diligently seeks an evidentiary hearing in the state courts in the manner prescribed, but the state courts deny him that opportunity, he can avoid § 2254(e)(2)'s barriers to obtaining a hearing in federal court. *Williams v. Taylor*, 529 U.S. 420, 437 (2000). A defendant fails to develop the factual basis of a claim only when he is at fault for failing to develop the factual record in state court, as when he or his counsel has not exercised proper diligence, or greater fault, in failing to develop the record. *Id.* at 432 ; *Moss v. Hofbauer*, 286 F.3d 851, 858-59 (6th Cir.), *cert. denied*, 537 U.S. 1092 (2002). The test for "failed to develop" is defined as a "lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel" in his or her attempts to discover and present a claim in the state court. *Williams*, 529 U.S. at 432; *Thompson v. Bell*, 315 F.3d 566, 594 (6th Cir. 2003). Diligence for purposes of § 2254(e)(2) depends upon "whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in the state court." *Williams*, 529 U.S. at 435; *Thompson*, 315 F.3d at 594. If the petitioner did not fail to develop the facts in the state court, then the district court may hold an evidentiary hearing. *Williams*, 529 U.S. at 433; *Thompson*, 315 F.3d at 594; *Moss*, 286 F.3d at 859.

Section § 2254(e)(2) may or may not preclude remand for an evidentiary hearing on the ineffective assistance issue.[10] We need not reach this issue, however. Even if we could remand for an evidentiary hearing, doing so would be futile. The present record appears to be complete. McAdoo points to no fact that he could develop on remand that would result in the granting of the writ. His affidavit in the district court addresses his claims about erroneous advice, but does not contain anything that relates to the prejudice issue. Nor does he identify any such evidence in his briefs; he simply relies on his claim of an invalid plea to establish prejudice. Yet the state court did not unreasonably find his plea to be valid. Thus, McAdoo's claim of prejudice fails.

## IV.

For all the foregoing reasons, we affirm the district court's denial of McAdoo's petition for writ of habeas corpus.

---

[10] Addressing the effect of § 2254(e)(2) on McAdoo's request for an evidentiary hearing would require us to consider the state court's evidentiary rulings and McAdoo's decision not to testify at the state court hearing on his motion to withdraw his plea.