NOT RECOMMENDED FOR PUBLICATION
File Name: 06a0030n.06
Filed: January 10, 2006

No. 03-2113

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

STEVE STRICKLAND,                    )
                                     )
        Petitioner-Appellant,        )
                                     )
v.                                   )  ON APPEAL FROM THE UNITED
                                     )  STATES DISTRICT COURT FOR THE
TERRY PITCHER, Warden,               )  WESTERN DISTRICT OF MICHIGAN
                                     )
        Respondent-Appellee.         )
                                     )           OPINION
                                     )
_____      )

**Before: DAUGHTREY, GILMAN and SUTTON, Circuit Judges.**

**RONALD LEE GILMAN, Circuit Judge.**  Steve Strickland was convicted in a Michigan

state court of both first-degree and second-degree criminal sexual conduct (CSC). He was sentenced

as a habitual offender to concurrent terms of imprisonment of 15 to 40 years on the first-degree CSC

count and 10 to 20 years on the second-degree CSC count. Strickland's convictions and sentences

were affirmed on direct appeal within the Michigan court system, and the district court denied his

petition for a writ of habeas corpus. For the reasons set forth below, we **AFFIRM** the judgment of

the district court.

**I.  BACKGROUND**

**A.      Procedural background**

Strickland was charged with sexually molesting Randa Howland, the 7-year-old daughter of his niece, on several occasions. Two charges were filed in relation to his conduct: (1) first-degree CSC for engaging in sexual penetration with a person under 13 years of age, in violation of Michigan Compiled Laws § 750.520b(1)(a), and (2) second-degree CSC for engaging in sexual contact (as opposed to penetration) with a person under 13 years of age, in violation of Michigan Compiled Laws § 750.520c(1)(a).

At Strickland's first preliminary-examination hearing, the Michigan magistrate judge concluded that there was sufficient evidence to charge him with the second-degree CSC count, but not the first-degree CSC count. *People v. Strickland*, No. 209765, 2000 WL 33535512, at *3 (Mich. Ct. App. Jan. 28, 2000). Over Strickland's objection, a second preliminary-examination hearing was conducted in which the prosecutor presented, in addition to the victim's testimony, testimony on the "penetration" element of the first-degree CSC charge from a medical doctor who had physically examined the victim. *Id.* The magistrate judge then concluded that there was sufficient evidence to charge Strickland with the first-degree CSC count as well.

Strickland was tried in December of 1997 and convicted on both counts of CSC. The Michigan Court of Appeals affirmed his convictions on direct appeal, and the Michigan Supreme Court denied further review. *Strickland*, 2000 WL 33535512, at *1; *People v. Strickland*, 618 N.W.2d 595 (Mich. 2000).

Strickland then filed a petition for a writ of habeas corpus in the United States District Court for the Western District of Michigan pursuant to 28 U.S.C. § 2254. The magistrate judge assigned to the case issued a Report and Recommendation, concluding that the habeas petition should be denied. His recommendation was adopted by the district court. Although the district court also

denied Strickland's application for a Certificate of Appealability (COA), this court granted a COA

on his claims that

> (1) insufficient evidence supports his first-degree criminal sexual conduct conviction; (2) the trial court improperly permitted the prosecution to strike the sole black juror from the jury venire for racially and sexually discriminatory reasons; (3) the trial court improperly refused to strike a biased juror; and (4) erroneous evidentiary rulings and prosecutorial misconduct denied him a fair trial.

(May 19, 2005 Order)

**B.      Facts relating to whether there was sufficient evidence of "penetration" to support Strickland's first-degree CSC conviction**

Strickland's insufficiency-of-the-evidence claim relates only to his first-degree CSC

conviction.  Under the provision of Michigan law setting forth the crime of first-degree CSC, sexual

"penetration" is an element of the offense.  Mich. Comp. Laws § 750.520b ("A person is guilty of

criminal sexual conduct in the first degree if he or she engages in sexual penetration with another

person and if . . . [t]hat other person is under 13 years of age.").  Strickland claims that his

conviction violates the Fourteenth Amendment's Due Process Clause because the evidence of

penetration was allegedly insufficient.

The evidence of penetration came in the form of testimony from the victim, a physician, and

a police officer.  Howland, eight years old at the time of the trial, testified that Strickland was the

only person who assaulted her.  *Strickland*, 2000 WL 33535512, at *1.  She further testified that

Strickland had "rubbed her 'private parts' with his 'private part' and his hand, and indicated that on

one occasion, [he] hurt her private part."  *Id*.

There was also testimony from Dr. Edward Cox, who had examined Howland.  *Id*.  Dr. Cox's

examination found a decreased amount of hymenal tissue and a scar on the back wall of her vagina,

and concluded that Howland's vagina had been penetrated by blunt force.  *Id*.  He could not come

to a conclusion, however, about what had penetrated her vagina. But Dr. Cox said that "this is something that a child would not willfully do to themselves. This caused pain. This caused bleeding. Kids don't do that to themselves." To counter Dr. Cox's testimony, Strickland called Debra Strickland, the sister of Howland's mother, who testified to seeing Howland on more than one occasion inserting an empty bottle into her vagina.

The prosecutor then presented rebuttal testimony on the penetration element. On direct examination, Howland had denied having testified before the magistrate who conducted the preliminary examination that Strickland had penetrated her. The prosecutor on rebuttal called a police officer who read, over Strickland's objection, portions of Howland's preliminary-examination testimony. In the exchange, the prosecutor asked what Howland's response had been to the question: "Where would his hands go once he put 'em under your nightgown?" The officer replied that her answer was: "In my private part." *See also Strickland*, 2000 WL 33535512, at *4. As a follow-up question, the prosecutor asked whether that response meant penetration, and the officer said that it did. *Id*. Strickland did not object to the follow-up question.

**C.      Facts relating to Strickland's claim as to the striking of an African-American female from the jury panel**

There were two African-Americans called as prospective jurors at Strickland's trial. The first was struck by the court for cause. The prosecutor exercised a peremptory challenge to strike the other, Juror Dean-Wells. *Strickland*, 2000 WL 33535512, at *2. After Strickland objected, the prosecutor defended the exercise of a peremptory challenge by stating:

> [I] wanted to keep her only for the reason that she had children, but in this case, your Honor, it involves a mother of three children. A black woman mother, inner city, who was neglectful, who had her children taken away and part of what's going to come out in this trial is that her relationship with her significant other, husband, in this case, involved domestic violence, involved the mother not being attentive and

neglectful to the daughter to the point where this case arose, and I'm going to have to call that mother certain things. I plan on not being very kind to that mother in this trial, and essentially putting the blame for this on the mother, other than the defendant, and I didn't think that Ms. Dean-Wells in her position, being the mother of three children and having been a shooting victim herself in a domestic violence case, I felt that she may take offense and may relate more to this mother that I will be condemning in my opening and closing statement and I just didn't feel because of that that she would have been a good juror for the prosecution.

There is—also the other reason, of course, is that a close relative of hers was convicted. Others had indicated that they were convicted by our office as well, but the most important and compelling reason was that I felt that she would relate more with the mother of this child that I would be very unkind to during this trial.

In this appeal, Strickland alleges that Dean-Wells was illegally struck from the panel of prospective jurors because she was African-American and because she was a woman.

**D.    Facts relating to Strickland's claim of an allegedly biased juror**

During the course of Strickland's trial, after the victim Howland had testified, Juror Kochneff came forward to "express[] concern about the way in which the victim's testimony was presented." In the judge's chambers, Kochneff met with the judge, the prosecutor, and defense counsel. According to the Michigan Court of Appeals, Kochneff

told the court that she wondered if the victim could have had an easier time expressing what she was trying to say by using a doll. The court then asked the juror if she was saying that she could not continue as a juror or that she just believed it would have been a better way of handling the testimony. The juror responded that she believed it would be a better way of handling the testimony.

*Strickland*, 2000 WL 33535512, at *3. Defense counsel asked that Kochneff be excused on the grounds of bias, but the judge denied the request. *Id*.

**E.    Facts relating to Strickland's claim that the trial court committed various evidentiary errors**

Strickland raises three evidentiary errors allegedly committed by the state trial court. He first argues that the trial court improperly allowed portions of the victim's preliminary-examination

-5-

testimony to be read during the trial.  Second, he claims that the court erred in allowing the prosecutor's follow-up question about whether the response "In my private part" meant penetration. Finally, Strickland argues that the prosecutor was permitted to cross-examine Debra Strickland in an improper and inflammatory manner.

**F.    Facts relating to Strickland's claim that the prosecutor engaged in misconduct during her opening statement and closing argument**

The final claim raised by Strickland is that the prosecutor engaged in misconduct during her opening statement and closing argument.  During the prosecutor's opening statement, she said that "Randa [Howland] will tell you that what penetrated her vagina was the defendant's penis."  And during her closing argument, the prosecutor asserted that Howland "'said at the first hearing [the first preliminary examination] . . . that it went in' and that this proved penetration."  Strickland did not object to these statements at the time they were made.  *Strickland*, 2000 WL 33535512, at *1.

## II.  ANALYSIS

**A.    Standard of review**

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal court

> may not grant a writ of habeas to a petitioner in state custody with respect to any claim adjudicated on the merits in state court unless (1) the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" . . . or (2) the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings."

*Taylor v. Withrow*, 288 F.3d 846, 850 (6th Cir. 2002) (quoting 28 U.S.C. § 2254 (d)).  This standard generally requires that federal courts defer to state-court decisions.  *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998) ("[AEDPA] tells federal courts: Hands off, unless the judgment in place is based on an error grave enough to be called unreasonable.") (citation and quotation marks omitted).

-6-

The first line of analysis under AEDPA involves two distinct inquiries regarding the consistency of the state-court decision with existing federal law. A state-court decision is considered "contrary to . . . clearly established Federal law" if it is "diametrically different, opposite in character or nature, or mutually opposed." *Williams v. Taylor*, 529 U.S. 362, 405 (2000) (quotation marks omitted). To be found an "unreasonable application of . . . clearly established Federal law," the state-court decision must be "objectively unreasonable" and not simply erroneous or incorrect. *Id*. at 409-11.

The second line of analysis under AEDPA concerns findings of fact made by the state courts. AEDPA requires considerable deference to such factual determinations. "A federal court is to apply a presumption of correctness to state court findings of fact for habeas corpus purposes unless clear and convincing evidence is offered to rebut this presumption. The appeals court gives complete deference to the federal district court's and state court's findings of fact supported by the evidence." *McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004) (citations omitted).

**B.      Sufficiency of the evidence relating to the "penetration" element of first-degree CSC**

The constitutional standard for whether a conviction can stand in the face of a claim of insufficient evidence was set forth by the United States Supreme Court in *Jackson v. Virginia*, 443 U.S. 307 (1979). The *Jackson* Court held that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319 (emphasis in original). Strickland must therefore show that the Michigan courts' application of the standard set forth in *Jackson* was "objectively unreasonable." *See Williams*, 529 U.S. at 409-11.

Setting aside for the moment Howland's contested preliminary-examination testimony that was read at Strickland's trial, the remaining evidence on the element of "penetration" was Howland's testimony that Strickland was the only one who had sexually assaulted her, her testimony that, on one occasion, Strickland had hurt her private part, and Dr. Cox's testimony that Howland's vagina was in fact penetrated. *See Strickland*, 2000 WL 33535512, at *1. But Strickland argues that the medical testimony did not link *him* to Howland's injuries and that there was no evidence that *he* penetrated her. To be persuasive, however, this argument requires looking at the medical testimony in isolation. Viewing the evidence in the light most favorable to the prosecution, *see Jackson*, 443 U.S. at 319, the medical testimony establishes that Howland was penetrated at some point, and Howland's testimony provides the link that Strickland argues is missing—the source of the injury.

Strickland tries to counter this conclusion by emphasizing Debra Strickland's testimony about seeing Howland inserting a bottle into her vagina on more than one occasion, and essentially arguing that Howland's acts may have been the source of her vaginal injuries. But after again viewing the evidence in the light most favorable to the prosecution, we believe that Dr. Cox's testimony that "a child would not willfully do [this] to themselves" negates this attempt by Strickland to show that there was insufficient evidence that Strickland sexually penetrated Howland.

We therefore conclude that the Michigan Court of Appeals's determination that there was sufficient evidence to support Strickland's first-degree CSC conviction was not an unreasonable application of the *Jackson* standard. Because evidence other than the contested preliminary-examination testimony was sufficient to support Strickland's conviction, we need not address the propriety of the state court's admission of the contested evidence.

**C.    Peremptory challenge of an African-American female juror during jury selection**

-8-

In this part of the appeal, Strickland argues that the prosecution's removal of Juror Dean-Wells was motivated by both the race and the sex of the potential juror. The case of *Batson v. Kentucky*, 476 U.S. 79 (1986), sets forth the standard to determine whether a potential juror was excused for a racially discriminatory reason. In *Purkett v. Elem*, 514 U.S. 765 (1995), the Supreme Court set forth the now-familiar analysis under *Batson*:

> Under our *Batson* jurisprudence, once the opponent of a peremptory challenge has made out a prima facie case of racial discrimination (step one), the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step two). If a race-neutral explanation is tendered, the trial court must then decide (step three) whether the opponent of the strike has proved purposeful racial discrimination. The second step of this process does not demand an explanation that is persuasive, or even plausible. At this [second] step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.

*Id*. at 767-68 (citations omitted) (alteration in original).

*J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127 (1994), sets forth a similar standard to determine whether a potential juror was excused as a result of discrimination on the basis of gender:

> As with race-based *Batson* claims, a party alleging gender discrimination must make a prima facie showing of intentional discrimination before the party exercising the challenge is required to explain the basis for the strike. When an explanation is required, it need not rise to the level of a "for cause" challenge; rather, it merely must be based on a juror characteristic other than gender, and the proffered explanation may not be pretextual.

*Id*. at 144-45 (citation omitted). In response to Strickland's arguments relating to the prosecution's peremptory challenge of the African-American female juror, we must determine whether the Michigan state courts applied *Batson* and *J.E.B.* in an unreasonable manner. *See Williams*, 529 U.S. at 409-11.

The prosecutor's lengthy explanation of why she exercised a peremptory challenge to strike Dean-Wells essentially boils down to four concerns about the potential juror: (1) she was a mother, (2) she had been a shooting victim in a domestic violence case, (3) the preceding two facts might make her sympathize with Howland's mother, also a victim of domestic violence, whom the prosecutor planned to demonize during the case, and (4) a relative of the juror had been subjected to prosecution in the same county. *See also Strickland*, 2000 WL 33535512, at *2.

The Michigan Court of Appeals determined that the reasons for the removal of Dean-Wells— because she was a victim of domestic violence and because she had a relative who had been prosecuted in the same county—were "clear and articulated racially neutral" reasons to remove her as a juror. It thus concluded that Strickland had not shown "purposeful discrimination." *Id*. We are of the opinion the state court's application of *Batson* and *J.E.B.* was not unreasonable. The prosecutor presented an explanation for removing her that was "facial[ly] valid[]" and without inherent "discriminatory intent." *Purkett*, 514 U.S. 767-68; *see Williams*, 529 U.S. at 409-11. Contrary to Strickland's assertions, discriminatory intent is not evidenced by the simple fact that the prosecutor used the words "black" and "woman" in addition to the explanations above to describe the similarities between Dean-Wells and Howland's mother.

**D.     Failure to remove the juror who came forward during trial to comment on the manner of presenting Howland's testimony**

Strickland also argues that he was deprived of his right to a jury trial and his right to due process when the state court refused to excuse Juror Kochneff, the juror who came forward after Howland testified to express concerns about the manner in which Howland had been examined. The Michigan Court of Appeals held that the comments made by the juror "did not reveal a bias or

prejudice that would influence how she would decide the case, and therefore her statements would not form the basis for a challenge for cause." *Strickland*, 2000 WL 33535512, at *3.

In so holding, the Michigan Court of Appeals did not cite any Supreme Court precedent. The inquiry for us, therefore, is not whether the state court unreasonably applied Supreme Court precedent, but rather is whether its decision was contrary to such precedent. *See Williams*, 529 U.S. 362, 405, 409-11 (discussing AEDPA's "contrary to" and "unreasonable application of" provisions). With respect to AEDPA's "contrary to" provision, this court has held that the failure of a state court to cite Supreme Court precedent does not necessarily entitle the petitioner to habeas relief: "The state court decision need not cite Supreme Court precedent, or even reflect awareness of Supreme Court cases, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" *Dennis v. Mitchell*, 354 F.3d 511, 517-18 (6th Cir. 2003) (citing *Early v. Packer*, 537 U.S. 3, 8 (2002)).

The question then is whether the Michigan Court of Appeals's decision was contrary to clearly established federal law as determined by the Supreme Court. In Strickland's brief, the only federal case cited with respect to this argument is *Irvin v. Dowd*, 366 U.S. 717, 722 (1961), in which the Court held that "the right to [a] jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors. The failure to accord an accused a fair hearing violates even the minimal standards of due process." *Irvin*, however, does not involve a factual setting applicable to the potential juror in question. We must therefore search elsewhere for relevant federal precedent.

Strickland is essentially claiming that in revealing her thoughts on the manner that Howland was questioned, Kochneff exhibited "actual bias." We have found no Supreme Court case directly on point. In the analogous context of excusing jurors during voir dire, however, the existence of

-11-

actual bias requires that the trial judge strike the biased juror. *See, e.g., United States v. Torres*, 128 F.3d 38, 43 (2d Cir. 1997) (stating that judges have the "authority and responsibility, either *sua sponte* or upon counsel's motion," to dismiss prospective jurors for cause, and that such cause can be demonstrated by "actual bias," defined as "the existence of a state of mind that leads to an inference that the person will not act with entire impartiality").

Strickland characterizes the comments of Kochneff to the judge and counsel, made in an in-chambers discussion, as representing "unmistakable" bias and "partiality [that] is plain from the record and not subject to debate." Saying that "using a doll . . . would have been a better way of handling [Howland's] testimony," however, does not indicate that Kochneff was actually biased, let alone actually biased against Strickland. *Strickland*, 2000 WL 33535512, at *3. The statements of Kochneff simply do not reveal "the existence of a state of mind that leads to an inference that the person w[ould] not act with entire impartiality." *See Torres*, 128 F.3d at 43. We therefore conclude that "neither the reasoning nor the result" of the decision of the Michigan Court of Appeals was contrary to federal precedent. *See Dennis*, 354 F.3d at 517-18 (citation omitted); *Williams*, 529 U.S. at 409-11.

## E.     Alleged state-law evidentiary errors

Strickland's claims of evidentiary error relate to the reading of Howland's preliminary-examination testimony during the trial, the admission of the police officer's response to the question about whether Howland's words—"In my private part"—meant penetration, and the manner in which the prosecutor cross-examined Debra Strickland. The Michigan Court of Appeals found that there was no error under the Michigan Rules of Evidence. *Strickland*, 2000 WL 33535512, at *4-5.

Strickland has not shown how the Michigan court rulings on these evidentiary issues resulted in a violation of his federal constitutional rights. *See Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994) ("Errors by a state court in the admission of evidence are not cognizable in habeas corpus proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial."). Because Strickland has not shown that the evidentiary rulings resulted in a constitutional violation, they cannot form the basis for habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[W]e reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

### F.     Prosecutorial misconduct

Strickland's final claim is that the prosecutor engaged in misconduct by making unfulfilled promises during her opening statement that Howland was sexually penetrated by Strickland and by emphasizing in her closing argument Howland's preliminary-examination testimony relating to penetration. But Strickland did not object to either statement at the time they were made. *Strickland*, 2000 WL 33535512, at *1. The Michigan Court of Appeals held that the failure to object precluded review and that Strickland could not satisfy the exception to this waiver rule by showing that not reviewing his claims would result in a miscarriage of justice. *Id*.

The failure to raise and preserve issues in a Michigan trial court generally precludes review by a Michigan appellate court. *People v. Grant*, 520 N.W.2d 123, 128 (Mich. 1994) ("As a general rule, issues that are not properly raised before a trial court cannot be raised on appeal absent compelling or extraordinary circumstances.") Failure to comply with state procedural rules also

precludes federal habeas review unless the petitioner shows adequate cause for not complying and that actual prejudice resulted from the alleged violation. *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996) ("[A] federal habeas corpus petitioner who fails to comply with a state's rules of procedure waives his right to federal habeas corpus review absent a showing of cause for non-compliance and some showing of actual prejudice resulting from the alleged constitutional violation.")(quotation marks omitted).

In this case, Strickland did not comply with the Michigan procedural rule requiring that he raise and preserve his objections at the trial level. He has not articulated any reason for not objecting at the time the prosecutor made the statements, nor shown how he was prejudiced by the prosecutor's statements. We therefore decline to review Strickland's prosecutorial-misconduct claims. *See id*.

## III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.