**NOT RECOMMENDED FOR PUBLICATION**
File Name: 09a0781n.06

**No. 07-5804**

## UNITED STATES COURT OF APPEALS
### FOR THE SIXTH CIRCUIT

**FILED**
DEC 11, 2009
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| TERESA DEION SMITH HARRIS, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE MIDDLE DISTRICT OF |
| CHERRY LINDAMOOD, Warden, Tennessee | ) | TENNESSEE |
| Prison for Women, | ) | |
| | ) | |
| Respondent-Appellee. | ) | |

Before: BATCHELDER, Chief Judge; SILER and GILMAN, Circuit Judges.

**PER CURIAM**. Teresa Deion Smith Harris, who is serving a sentence of life without parole in Tennessee on a conviction of first degree felony murder for her role in the robbery, kidnaping, and murder of Dennis Brooks, Jr., appeals the district court's denial of her petition for a writ of habeas corpus. Upon consideration of Harris's motion to waive oral argument, we unanimously agreed that oral argument is not needed. Fed. R. App. P. 34(a). We review the district court's legal conclusions de novo. *Miller v. Francis*, 269 F.3d 609, 613 (6th Cir. 2001). Because Harris's habeas petition is based on the transcripts from her state court trial, we also review the district court's factual findings de novo. *Id*. Nevertheless, pursuant to the Anti-Terrorism and Effective Death Penalty Act (AEDPA), we apply a presumption of correctness to the state court's factual findings unless clear and convincing evidence is offered to rebut this presumption. 28 U.S.C. § 2254(e)(1); *McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004). We affirm the judgment of the district court.

No. 07-5804
Harris v. Lindamood

Harris procedurally defaulted her claim that trial counsel was ineffective, in violation of the Sixth and Fourteenth Amendments, for failing to present evidence that she did not have the necessary mental state for conviction. *See Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). She did not initially pursue an ineffective assistance of counsel claim in her appeal as a matter of right nor did she raise this claim in her permissive appeal to the Supreme Court of Tennessee. She first raised an ineffective assistance of counsel claim in her petition for post-conviction relief. Nevertheless, in appealing the dismissal of her petition for post-conviction relief, she dropped her claim that trial counsel was ineffective for failure to present a defense at trial regarding her state of mind. She attempted to revive this claim in her second permissive appeal to the Supreme Court of Tennessee, but because she failed to consistently pursue the claim through Tennessee's ordinary appellate review procedures, she procedurally defaulted it. *See id*.

Harris now seeks to revive the claim by attempting to demonstrate her actual innocence of first degree felony murder. *See Herrera v. Collins*, 506 U.S. 390, 404 (1993) (stating that a procedural claim of actual innocence constitutes "a gateway through which a habeas petitioner must pass to have [her] otherwise barred constitutional claim considered on the merits"). To establish actual innocence, the habeas petitioner must show that "in light of the new evidence, no juror, acting reasonably, would have voted to find [her] guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 329 (1995). She asserts that she is factually innocent because she was suffering from a mental condition on the night that she participated in the crime and could not have had the required mens rea to commit first degree felony murder. Under Tennessee law, no culpable mental state is required for conviction of felony murder, except the intent to commit the underlying offense. Tenn.

Stat. Ann. § 39-13-202(b). Therefore, the key inquiry in this petition is whether Harris has sufficiently demonstrated that she did not have the required intent to commit any of the predicate offenses to first degree felony murder, i.e., robbery, kidnaping, or murder. *See id*.

The only new evidence that has been produced in support of Harris's assertion of actual innocence is a forensic psychiatric evaluation of Harris by William Bernet, M.D. Dr. Bernet's report, produced in 2002, which purports to be an evaluation of Harris's mental state at the time of the 1993 murder. However, because the report was produced more than eight years after the offense, it lacks the same credibility and relevance as the psychological evaluations that were submitted during trial. *See Harries v. Bell*, 417 F.3d 631, 636 (6th Cir. 2005). Moreover, Dr. Bernet's report is essentially a reevaluation of facts that were presented during the sentencing phase of trial.

As such, Dr. Bernet's report is insufficient to adequately demonstrate that Harris did not have the required intent to commit first degree felony murder. The only new evidence that the report provides is Dr. Bernet's belated opinion that Harris suffered from acute stress disorder *during* the course of the offense. Conversely, at the capital sentencing phase, Harris's experts–Phillip Morson, M.D., and Gillian Blair, a licensed clinical psychologist–testified that Harris suffered from post-traumatic stress disorder *caused by* her witnessing and participating in the murder of Brooks. Dr. Blair also testified that any post-traumatic stress that Harris suffered from would not have impacted her actions on the night of the murder.

The evidence put forward by Harris does not adequately account for the deliberate, active role Harris played in the events leading to the murder of Brooks, including stealing the victim's truck and kidnaping Brooks. Harris flagged down Brooks, causing him to stop and exit his truck. After her

compatriots had emerged from their hiding place and forced Brooks to the ground, Harris ran up to Brooks, punched him two or three times in the back, cursed him in a "mean," "aggressive," and "very hateful voice," and told him to lie down on the ground. Harris voluntarily got into the stolen truck. Although it is unclear whether Harris shot Brooks in the hip, she admitted to holding him at gunpoint. She yelled at Brooks to shut up after he was shot. She admitted to stabbing Brooks' dead body and touching her lips to his severed heart. Moreover, she actively and deliberately participated in covering up the murder. Indeed, the evidence clearly demonstrates that Harris was an active participant over an extended period of time in the events leading up to the brutal murder of Brooks. Because Harris has failed to demonstrate her actual innocence for first degree felony murder, her procedurally barred ineffective assistance of counsel claim cannot be considered on the merits. *See Pudelski v. Wilson*, 576 F.3d 595, 605 (6th Cir. 2009).

Harris also argues that her petition should be remanded because the district court allegedly erred by denying habeas corpus relief without having before it the state court trial transcripts. This argument fails, however, for two reasons. First, Harris did not seek a certificate of appealability on this issue, and therefore we are without jurisdiction to review it pursuant to 28 U.S.C. § 2253(c). *See United States v. Hardin*, 481 F.3d 924, 926 (6th Cir. 2007) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003)). Second, even if we had jurisdiction, Harris has failed to offer evidence to rebut the presumption that the district court reviewed the state court trial transcript, filed belatedly in the record by Harris's counsel, prior to denying Harris's motion to alter or amend the denial of habeas relief. *See United States v. Gale*, 468 F.3d 929, 941 (6th Cir. 2006) (explaining in the sentencing context that "[t]here is a presumption in the law that a district court knows and applies

the law correctly, and a similar presumption must extend to the court's factual review of the record," and that "without some affirmative indication in the record to the contrary . . . , we presume that a district court has reviewed the evidence provided to it" (citation omitted)); *see also Howard v. United States*, 533 F.3d 472, 475 (6th Cir. 2008) (stating that a motion to alter or amend a judgment operates to suspend the finality of the district court's judgment and allows the district court to correct its own errors, sparing the parties and appellate courts the burden of unnecessary appellate proceedings).  Accordingly, Harris's argument on this point is without merit.

**AFFIRMED**.