**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0435n.06
Filed: June 27, 2006

**Nos. 04-1763 and 04-1816**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| BRADLEY BURTON, | ) | |
| | ) | |
| Petitioner-Appellee/Cross-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| BARBARA BOCK, Warden, | ) | MICHIGAN |
| | ) | |
| Respondent-Appellant/Cross-Appellee. | ) | |
| | ) | |
| | ) | |
| | ) | |

Before: SILER, BATCHELDER, and MOORE, Circuit Judges.

**SILER**, Circuit Judge. Petitioner Bradley Burton was convicted of first- and second-degree criminal sexual conduct following a jury trial in a Michigan Circuit Court in 1995 for improper sexual encounters with a nine- and ten-year-old girl. The Michigan Court of Appeals affirmed the conviction, but the United States District Court granted conditional habeas corpus relief based upon its finding that the definition of reasonable doubt as a "true substantive" reason lowered the prosecutor's burden of proof (or raised the standard of acquittal). Warden Bock appeals the district court's decision arguing in various forms that the definition was not constitutional error. Burton also cross-appeals, claiming that the prosecution violated his right to remain silent under the Fifth Amendment. We REVERSE the granting of the writ for the reasons set forth herein.

We are to determine whether the trial court's pre-jury selection definition of reasonable doubt as a "true substantive" reason improperly diminished the prosecutor's burden of proof. Within that question, we must determine whether (1) the instructions as a whole conveyed the correct concept of reasonable doubt; (2) there was a reasonable likelihood that the jurors understood the instructions to permit conviction on a lesser standard than that requiring guilt beyond reasonable doubt; and (3) the state court's decision was an unreasonable application of Supreme Court precedent.

We reverse the district court's grant of habeas corpus because the pre-jury selection definition of reasonable doubt as a "true substantive" reason did not equate to the prohibited instruction language of *Cage v. Louisiana*, 498 U.S. 39, 40 (1990) (*per curiam*). The reasonable doubt instruction language is more analogous to that in *Victor v. Nebraska*, where an instruction defining reasonable doubt as a "substantial" doubt was held constitutional for purposes of comparing reasonable doubt to a fanciful doubt. 511 U.S. 1, 19-20 (1994). In this case, the Michigan trial court compared reasonable doubt to doubt that is "flimsy" or "fanciful." In summary, there was no reasonable likelihood that the jury convicted on a lesser standard because the trial court's pre-jury definition is not expressly prohibited by *Victor* or *Cage*; the trial court offered the model instruction, which has been approved by this court, *see Binder v. Stegall*, 198 F.3d 177, 179 (6th Cir. 1999); and the correct burden of proof was conveyed to the jury on more than one occasion. Thus, the district court's grant of habeas corpus was based on an erroneous conclusion that the state court decision was an unreasonable application of Supreme Court precedent. Therefore, we reverse and vacate the writ of habeas corpus. In addition, we affirm the district court's denial of Burton's Fifth

Amendment cross appeal because he procedurally defaulted the claim by failing to object contemporaneously.

## FACTS

The facts pertaining to Burton's Fifth Amendment claim are presented first followed by the facts pertaining to the jury instruction claim. Prior to arrest, Burton was interviewed by Detective Vincent Woods. During the interview, Woods administered *Miranda* rights[1] to Burton, who agreed to sign a waiver and discuss the case. At trial, Woods testified to the contents of Burton's statements and said that Burton at first agreed to "talk to some other police officers about the matter,"[2] but shortly before the date of that interview, Burton refused to do so. Burton did not object to Woods' testimony.

Burton took the stand and denied playing sexual games with the girls. During cross-examination, the prosecutor asked the following questions that Burton asserts were an attempt to show that he was agitated with the detective when confronted with specific allegations of molestation:

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[2] The contents of the statements revealed that he (1) babysat the victims; (2) knew of the truth or dare game, although he did not play it with the girls; and (3) wanted to know the specific allegations. Woods testified:

> Prior to his – Mr. Burton's departure, we had made an arrangement that he would agree to talk to some other police officers about the matter. I – he wanted me to set up a date for that. I made pre-contact with him, kept– like I told him I would. Shortly before the date was set up that he was going to speak to the other officers, he denied [sic] speaking to them and said he was done talking to me.

Prosecutor: At the conclusion of his questions, you said you would be available for a– for additional questions; but then you did not do that. Is that right?

Burton: He didn't say anything about additional questions. He ask – he said he was gonna contact me – with me about takin' a lie detector test.

Prosecutor: I see. And he did that didn't he?

Burton: Yes, he did.

Prosecutor: And you did not do that.

Burton: Yes and no. Heh, heh, heh.

Prosecutor: You did not do what you told him you would do; isn't that correct?

Burton: I turned his –

Trial Court: Hold it. Now the Defendant has initiated that remark about a lie detector test. The Prosecutor's goin' down that road. The Defendant's wrong for bringing the subject up. The Prosecutor's wrong for goin' down that road. It's irrelevant. They're not admissible in Michigan. The whole subject is totally out of order. He shouldn't have initiated that remark. The Prosecutor should not pursue it. And I don't know where the defense is goin'. But all three of you gentlemen will just skip the subject, 'cause it patently – sit down – its patently irrelevant in this state. Patently irrelevant. They're not deemed reliable.

The Michigan Court of Appeals addressed Burton's claim that the "prosecutor created error requiring reversal by eliciting testimony that defendant decided to remain silent following the administration of *Miranda* warnings, and not to take a lie detector test." It held that by making some statements, Burton waived his Fifth Amendment rights and that the prosecutor's questions were proper because the facts did not show that Burton revoked his *Miranda* waiver.

The Michigan Court of Appeals held:

Defendant did not object when the prosecutor first asked a police officer about defendant's refusal to submit to additional questioning. Absent a timely

- 4 -

objection, we must consider if the prejudicial effect of the remark was so great that it could not have been cured by an appropriate instruction. *People v. Turner*, 213 Mich App 558, 575; 540 NW2d 728 (1995). We find that defendant did not suffer prejudice that could not have been cured by a timely instruction.

Although the prosecutor's question might have signified to defendant an implicit reference to a lie detector test, it was defendant who first mentioned the term "lie detector." Then, given the opportunity, defendant failed to give the simple explanation that he refused to take it on the advice of counsel. Moreover, the isolated reference was brief, and the court immediately ruled that the subject was irrelevant, not admissible, and totally out of order. We find no prosecutorial error.

Prior to the empaneling of the jury, before a group of unidentified prospective jurors, the trial court delivered the following address, that included, among other things, a description of reasonable doubt:

Before any jury in this country can ever find someone guilty, they gotta be satisfied by a standard, by a legal standard. And our country has said from day one that the standard shall be beyond a reasonable doubt. You've heard the terms, haven't ya? We all have. We've read 'em, we've heard 'em. Heaven knows we've been inundated with it in terms of one trial from California. All right.

You'll notice I didn't say something that we've all heard someplace. I don't know where it comes from, but, you know, it just sort of – we hear it. Beyond a reasona– beyond a shadow of a doubt. Heard it, haven't we? Beyond all doubt. Beyond a shadow of doubt.

That's certainly not the standard. And if you think about it, beyond all doubt, beyond a shadow of a doubt, we might as well all go home. I'm serious. And I'm not talking philosophically here. I'm talking about reality. Nothing in this world can be proven beyond all doubt. Nothin'. We'd – let's go home. Same with the other si[de] – the – the other end of the spectrum. Jurors have said to me on occasion: Well, you know, there's always the possibility of the innocence of the defendant, always that possibility out there; you know, kind of flimsy, fanciful out-there philosophy. You know, that's true. There's always that possibility. That being the case, what, are we all gonna go home too?

So beyond all doubt? Of course not. Always an outsi[de] – a possibility of innocence of the Defendant? Of course not. So what we do is, we say relax. Bring

your experiences of life to a courtroom; bring your reason and your common sense.

Common sense. What does my common sense tell me. What does my experience tell me. When I'm listening to a witness, what do I know from my experience of life; how's that person responding; the appropriateness of the response; the logic of the response; the truthfulness of the response. We do that every day in life. And that's what you're gonna be doing here.

You're the triers of the facts. Beyond a reasonable doubt is beyond a doubt that you could assign a true substantive reason to.

At the conclusion of the evidence, the trial court instructed the jury as follows:

*And you know we talked about reasonable doubt.* A reasonable doubt is a fair, honest doubt growing out of the evidence or lack of evidence. It's not merely an imaginary or possible doubt but a doubt based upon reason and common sense. Reasonable doubt is just what the word suggests: a doubt that is reasonable after a careful and considered examination of the facts and circumstances of this case.

(emphasis added). Burton concedes that all but the "And you know we talked about reasonable doubt" tracked the language of the model instruction.

The Michigan Court of Appeals affirmed Burton's conviction. With respect to reasonable doubt, the Michigan Court of Appeals held as follows:

Defendant next argues that the trial court's instruction on reasonable doubt consistently denigrated the standard by including a burden shifting requirement that the jury "assign a true, substantive reason" to any doubt before acquitting defendant. We review *de novo* a claim of instructional error. *People v. Hubbard* (After Remand), 217 Mich App 459, 487; 552 NW2d 493 (1996). We find that the judge's instructions, when read in their entirety, did not shift the burden that had to be satisfied, but rather, properly advised the jurors of the prosecutor's burden of proof and required them to have a reason to doubt the defendant's innocence.

Later, the district court conditionally granted habeas corpus relief to Burton on the ground that the affirmation of the jury instruction on reasonable doubt was an unreasonable application of Supreme Court precedent. The district court found that the instructions "impermissibly diminished

the State's burden of proof below that required by the Constitution and that there is a reasonable likelihood that the jury convicted the petitioner under a lesser standard." In addition, it denied relief on Burton's claim that the prosecutor improperly commented on his Fifth Amendment right to silence.

## ANALYSIS

This habeas corpus appeal is subject to the requirements of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Campbell v. Coyle,* 260 F.3d 531, 538-39 (6th Cir. 2001). Under the AEDPA, a habeas writ may not be granted unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Accordingly, this court reviews the district court's legal conclusions *de novo*. *Moss v. Hofbauer,* 286 F.3d 851, 858 (6th Cir. 2002). A state court renders an adjudication "contrary to" federal law when it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000). A state court renders an "unreasonable application" of federal law when it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. Factual findings made by the state court, or by state appellate courts based upon the trial record, are presumed to be correct but may be rebutted by clear and

convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Bugh v. Mitchell,* 329 F.3d 496, 500-01 (6th Cir. 2003).

### Fifth Amendment Cross Appeal

Burton claims that the prosecutor violated his rights under *Doyle v. Ohio*, 426 U.S. 610, 617-18 (1976), by eliciting testimony showing failure to cooperate with police after an initial police interview. First, during the prosecution's case in chief, Woods testified that Burton agreed to meet and speak with other police officers but later stated that he was "done talking." The Michigan Court of Appeals denied relief on procedural default grounds because Burton had failed to contemporaneously object to this testimony, and held that prejudice did not accrue that could not have been cured by a limiting instruction. Second, the prosecutor cross-examined Burton about his refusal to meet with officers during which time Burton made reference to a polygraph test that he admitted he did not take.[3] The Michigan Court of Appeals determined that this isolated reference was brief, and the trial court had ruled immediately that it was irrelevant and inadmissible.

In his cross appeal, Burton argues that habeas corpus relief should be granted because the prosecutor improperly elicited testimony that he had not cooperated by not following through with a prior agreement to talk to another police officer. The Michigan Court of Appeals denied his claim finding that Burton had waived his Fifth Amendment right and that he had not refused the offer of a polygraph in reliance of this Fifth Amendment right. Specifically, he claims he revoked his waiver

---

[3]After Burton left the witness stand, his counsel moved for a mistrial on the ground that the prosecution had improperly commented on Burton's refusal to take a polygraph. The trial court ruled that the defendant had brought it up and prevented any further discussion of the matter.

upon the advice of his attorney to do so and that he should have been able to present evidence that he acted upon the advice of his attorney. The Michigan Court of Appeals held that nothing prevented Burton from stating that he acted upon his attorney's advice.

Procedural default is a ground to deny habeas corpus. *Coleman v. Thompson*, 501 U.S. 722, 747 (1991). The failure to object contemporaneously is a generally recognized, firmly established independent and adequate state law ground for refusing to review trial errors. *Id.* On appeal Burton argues that he did object, but the statements are not clear objections on any certain ground.[4] However, we find no record of Burton's objection.

Additionally, the Michigan Court of Appeals's determination that Burton did not suffer prejudice that could not have been cured by a timely instruction is a state court finding that warrants deference unless shown to be an unreasonable application of federal law or a clearly erroneous factual finding. *McAdoo v. Elo,* 365 F.3d 487, 494 (6th Cir. 2004). Because Burton does not show that prejudice exists beyond the curative powers of a timely objection and request for a limiting instruction, deference is provided to the Michigan Court of Appeals. *Id.*

The Michigan Court of Appeals also addressed Burton's polygraph claim on its merits and found that he waived his right to remain silent and introduced the subject of the polygraph into testimony. The holding that it was "proper for the prosecutor to question defendant regarding his

---

[4] Burton claims that he objected by stating, "Well the Prosecutor is the one that brought it out–or the statement of the Deputy is the one that brought it out." The trial court responded, "That's not true, Sir."

lack of cooperation with the investigating officers" because of partial Fifth Amendment waiver was not an objectively unreasonable application of Supreme Court precedent.

Post-arrest, post-*Miranda* silence may not be used against a criminal defendant where the defendant's silence was induced by *Miranda* warnings. *Doyle*, 426 U.S. at 619. This is not a *Doyle* case because "a defendant who voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent." *Anderson v. Charles*, 447 U.S. 404, 408 (1980). Burton submitted to questioning by waiving his Fifth Amendment right to silence. After *Miranda* warnings are administered, any voluntary conversation is admissible, and a refusal to participate in an interview, without more, does not equate to the assertion or reassertion of the right to silence. *See United States v. Pitre*, 960 F.2d 1112, 1125-26 (2d Cir. 1992).

A prosecutor is not prohibited from asking why a defendant did not submit to an additional agreed interview with police where a defendant takes the stand in his own defense. *United States v. Crowder*, 719 F.2d 166, 172 (6th Cir. 1983) (*en banc*), *cert. denied*, 466 U.S. 974 (1984). In *Crowder*, we held that there was no constitutional error where the district court admitted testimony describing the substance of a defendant's statements to an FBI agent. *Id.* The defendant stated to police that he "did not desire to discuss the matter for which he was arrested and that he chose to stand by his statement to the state police." *Id.* at 170. The defendant never exercised his *Miranda* rights to remain silent and instead reiterated an exculpatory story. *Id.* The Fifth Amendment privilege to remain silent was not exercised as "the defendant has not remained silent at all." *Id.* at 171 (citing *Anderson*, 447 U.S. at 408).

Burton has failed to demonstrate the alleged error had a substantial impact on the outcome of his case, and therefore he is not entitled to habeas corpus relief on this claim. *See Brecht v. Abrahamson*, 507 U.S. 619, 635-36 (1993). The district court's denial of habeas relief on this ground is affirmed.

### Reasonable Doubt Definition

This review of the reasonable doubt standard begins with *In Re Winship*, 397 U.S. 358, 362 (1970), where the Supreme Court discussed the venerated principle that guilt must be proved beyond a reasonable doubt in a criminal case. Undoubtedly, this standard is of vital importance to criminal procedure to ensure the presumption of innocence, deter unfounded convictions, and deter factual error. *Jackson v. Virginia*, 443 U.S. 307, 315 (1979).

The reasonable doubt standard is a requirement of due process, but the Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course. *Victor*, 511 U.S. at 5. A trial court is required to instruct the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt, *see Jackson,* 443 U.S. at 320 n. 14, but the Constitution does not require that any particular form of words be used to convey the prosecutor's burden of proof. *Cf. Taylor v. Kentucky,* 436 U.S. 478, 485-486 (1978). Altogether, the instructions as a whole must correctly convey the concept of reasonable doubt. *Holland v. United States,* 348 U.S. 121, 140 (1954). The constitutional question in the present case is whether there is a reasonable likelihood that the jury understood the instructions to permit a conviction based upon lesser proof than the beyond a reasonable doubt standard demands. *Victor*, 511 U.S. at 6.

Warden Bock argues that the prosecutor's burden of proof was not reduced. She characterizes the preliminary statements to jurors as comparing and contrasting reasonable doubt and the phrase "beyond the shadow of a doubt." She posits that equating beyond a reasonable doubt to a doubt that can be assigned a "true" and "substantive" reason is neither prohibited by Supreme Court precedent nor an unreasonable application of that precedent. The Warden notes that use of the term "substantial doubt" in defining reasonable doubt was upheld as constitutional in *Victor,* 511 U.S. at 6.

Burton argues that the preliminary statement before the jury was empaneled diminished the significance of the reasonable doubt standard and infected the jury instructions as a whole. He posits that the trial court's first statement "was an unmistakable reference to the then recently concluded O.J. Simpson trial" and that there was no logical reason to link reasonable doubt to that case. Because the statement was unnecessary and as the district court noted "did little to inform the jury of the quantum of proof required for conviction," Burton asks that we look beyond what was said to infer that the trial court harbored a nefarious intent to sway the jury.

The crux of Burton's argument is that the definition of reasonable doubt as one the jury "could assign a true substantive reason to" heightened the quantum of doubt to acquit and thereby decreased the prosecutor's burden of proof. Based upon this, he contends that there was a reasonable likelihood that the jury misinterpreted and applied a less rigorous legal standard. Finally, Burton concedes that the final jury instruction tracked verbatim the Michigan Criminal Jury Instructions except for the trial court's reference to "[a]nd you know we talked about reasonable doubt." *See* CJI2d 3.2(3).

The first step is to examine the impact and meaning of "true substantive" included within a reasonable doubt instruction. "Substantive" is defined as

> **1.** SUBSTANTIAL 5. **2.** Independent in function an or existence: not subordinate. **3.** Not imaginary : ACTUAL. **4.** Of or relating to the essence or substance : ESSENTIAL <substantive data> **5.** Having a solid basis: FIRM. **6.** Expressing or denoting existence, e.g., the verb to be. **7.** Denoting a noun or noun equivalent – *n.* A word or group of words function as a noun.

WEBSTER'S II. NEW RIVERSIDE UNIVERSITY DICTIONARY 1155-56 (1988). In addition, "true" is defined as "**1.** Being consistent with reality or fact. **2.** Conforming exactly to a rule, standard, or pattern. **3.** Reliable; accurate <a true prophecy> **4.** Genuine : real <a true artist>." *Id.* at 1239.

Thus, the meaning of "substantive" is the same as "substantial." Defining reasonable doubt as a substantial doubt has not been held in-and-of-itself to be constitutional error. *Victor,* 511 U.S. at 19-20; *see, e.g.*, *Beverly v. Walker*, 118 F.3d 900, 904 (2d Cir.), *cert. denied,* 522 U.S. 883 (1997) (holding that instruction stating that a "[r]easonable doubt must be based entirely and absolutely upon some good sound substantial reason" did not shift or lower prosecutor's burden); *Adams v. Aiken*, 41 F.3d 175, 182 (4th Cir. 1994) (equating reasonable doubt to substantial doubt upheld where accompanied by distinguishing terms such as whimsical, imaginary, weak, and slight). Equating reasonable doubt to substantial doubt can be problematic, but the Supreme Court considered it "unexceptional" as a measure to distinguish reasonable doubt from mere speculation. *Victor,* 511 U.S. at 19-20. Usually, it is another word that modifies "substantial" that alters the reasonable doubt standard to a degree or magnitude of doubt greater than that required for acquittal under the Due Process Clause. *See Cage*, 498 U.S. at 40 (combining substantial with "such a doubt as would give rise to a grave uncertainty").

Appellate habeas corpus review requires that we determine whether Burton demonstrated that the definition of reasonable doubt was contrary to clearly established Supreme Court precedent. *Austin v. Bell*, 126 F.3d 843, 846 (6th Cir. 1997), *cert. denied*, 523 U.S. 1079 (1998) ("[t]o warrant habeas relief, jury instructions must not only be erroneous, but also, taken as a whole, so inform that they rendered the entire trial fundamentally unfair."). Burton's success in the district court is premised on the Supreme Court's holding in *Cage* that a particular definition of reasonable doubt violated the Due Process Clause. 498 U.S. at 40. We read *Cage* narrowly to be the threshold that such comparisons in jury instructions may not pass beyond. *See Johnson v. Alabama*, 256 F.3d 1156, 1193-94 (11th Cir. 2001) (noting *Cage* is limited precedent due to modifications by subsequent decisions). In pertinent part, the jury instructions contained a comparison that reasonable doubt "must be such doubt as would give rise to a grave uncertainty . . . . It is an actual substantial doubt." *Cage,* 498 U.S. at 40. The Court considered that the combination of "grave" and "substantial" suggested a higher degree of doubt than that required for acquittal. *Id.* at 41.

In *Binder v. Stegall*, we addressed the constitutionality of the standard Michigan jury instruction used here in addition to deciding that a comparison of reasonable doubt as "fair, honest doubt" did not lower the government's burden of proof. 198 F.3d at 179. More recently, we addressed the issue with respect to finding aggravators during a penalty phase hearing in *Coleman v. Mitchell*, 268 F.3d 417, 437 (6th Cir. 2001). The trial court provided the following reasonable doubt instruction in the penalty phase:

> Remember that reasonable doubt is present when after you carefully consider and compare all evidence, you can not say you are firmly convinced of the truth of the charge. Reasonable doubt is doubt based on reason and common sense. Reasonable

> doubt is not mere possible doubt because everything relating to human affairs or depending upon moral evidence is open to some possible or imaginary doubt. Proof beyond a reasonable doubt is proof of such character that an ordinary person would be willing to rely and act upon it in the most important of his or her own affairs. If, after a full, fair and impartial consideration of all relevant evidence from both trials you are convinced beyond a reasonable doubt that the aggravating circumstances which the defendant was found guilty of committing is sufficient to outweigh the factors in mitigation then the State has proven its right to be entitled to the recommendation of the death penalty.

*Id.* at 436-37. In *Coleman*, this court permitted several definitions of "reasonable doubt," including "not a mere possible doubt." *Id.* Noting the lack of conflict with *Victor*, we held that the petitioner had not articulated how "firmly convinced" when taken together with various descriptions of reasonable doubt, "created a reasonable likelihood that the jury understood the instructions as establishing a clear and convincing evidence standard for determining whether aggravating factors outweigh mitigating factors." *Id.* When the court concluded its examination of the instructions as a whole, it found that the prosecutor's burden of proving the aggravating circumstances beyond a reasonable doubt had not shifted. *Id.* Supported by the holding in *Victor* and the instructions' clear indication that the burden of proof rests with the prosecution, we held that the penalty phase instruction did not violate due process. *Id.*

Similar cases in sister circuits hold that the use of the term "substantial" when comparing and contrasting standards of proof to explain reasonable doubt neither diminishes the burden of proof nor constitutes constitutional error. *See Johnson*, 256 F.3d at 1193-94 (holding that instruction when viewed as a whole equating beyond a reasonable doubt to a "moral certainty"; an actual and substantial doubt; and requesting that each juror look to "heart and mind" for the answer, was constitutionally acceptable); *Tillman v. Cook*, 215 F.3d 1116, 1123 (10th Cir. 2000) (holding

instruction defining reasonable doubt as "real, substantial doubt and not one that is merely possible or imaginary" did not lower prosecutor's burden of proof because it referred to existence not magnitude of doubt); *Ramirez v. Hatcher*, 136 F.3d 1209, 1212-13 (9th Cir.), *cert. denied*, 525 U.S. 967 (1998) (holding that it was "unlikely that jurors understood the use of 'substantial' to raise quantum of doubt required for acquittal" for the purpose of contrasting substantial doubt and mere possibility of speculation); *Flamer v. Delaware*, 68 F.3d 736, 757 (3d Cir. 1995) (*en banc*) (approving instruction contrasting "substantial doubt" with "mere possible," "vague speculative," and with "mere possibility of speculation"); *Kornahrens v. Evatt*, 66 F.3d 1350, 1363 (4th Cir. 1995) (holding that equating reasonable doubt to a "real" and "substantial" doubt does not violate due process in this case because "the full instruction tempered any risk of confusion from the substantial doubt language.").

Viewing the instructions as a whole, there was no reasonable likelihood that the jury applied a lower standard of proof. Indeed, the trial court provided clear explanations that the burden of proof rests with the prosecution. Prior to empaneling the jury and right before describing reasonable doubt, the trial court also instructed:

> The law says that the burden of proof is with the Prosecutor; it never shifts to a defendant. Why? Defendant didn't bring the charges. Why should he therefore have to prove anything? The party that brought the charges has to prove their case. That's the principle. Okay . . . . But never does the burden shift. That's the principle.

In the final jury instructions, the trial court stated:

> You know that someone accused of a crime is presumed innocent of the crime. That means you start with the presumption that the Defendant is innocent. This presumption continues throughout a trial, and it entitles the Defendant to a verdict

> of not guilty unless you're satisfied beyond a reasonable doubt that [he] is guilty . . . . The Prosecutor has to prove each of these elements of the crime beyond a reasonable doubt. The Defendant is not required to prove his innocence or do anything. If you find the Prosecutor has not proven every element beyond a reasonable doubt, again you have a duty to return a verdict of not guilty.

The trial court's statements correctly identify, both before empaneling and prior to the reasonable doubt instruction, that the burden of proof rests with the prosecutor and mandates acquittal if the beyond a reasonable doubt standard is not satisfied.

We have held that "circularity and possible ambiguity does not render the instruction constitutionally infirm." *See Binder,* 198 F.3d at 179 (citation omitted). Likewise, but consistent with stated precedent, the trial court equated reasonable doubt as a "true substantive" doubt in contrast to "you know, a kind of flimsy, fanciful out-there philosophy." *Cage* is materially distinguishable as the instructions and the comparison are remarkably different. 498 U.S. at 40. As shown above, the trial court's comparative statement — relating to existence of doubt rather than magnitude — was not at odds with clearly established federal law.

It is not vital that the state court recite any federal law in its opinion, contrary to the district court's conclusion. *See Early v. Packer,* 537 U.S. 3, 8 (2002) (holding that citations or awareness of Supreme Court precedent not required "so long as neither the reasoning nor the result of the state-court decision contradicts them"). The Michigan Court of Appeals held the burden of proof was not diminished or shifted to Burton and cited its own case law, *People v. Hubbard*, 552 N.W.2d 493 (Mich. Ct. App. 1996). The district court found that the Michigan Court of Appeals employed "an incorrect analysis [that] constituted an unreasonable application of clearly established federal law as determined by the Supreme Court in *Cage* and *Victor*." We disagree. As noted, *Cage* is

distinguishable and *Victor*, allowing a somewhat similar definition, does not "clearly" prohibit such instructions. Although the district court's opinion is not without valid criticisms of the given instruction, we cannot say that it is at odds with the Supreme Court's case law.

There are several other considerations in this case including the fact that the instruction at issue was provided before the empaneling of the jury. The trial court did identify that the presumption of innocence always rests with the defendant and the burden of proof never shifts from the prosecution both before the definition in question was uttered and before the final jury instructions. Notably, the instruction provided prior to juror deliberations has been accepted by this court. *Binder,* 198 F.3d at 179. In conclusion, when the instructions are viewed as a whole, the correct concept of reasonable doubt was provided, and it was clear that the burden of proof rested with the prosecution. *Holland,* 348 U.S. at 140. Consequently, there was no reasonable likelihood that the jury understood the instructions to permit a conviction based upon lesser proof than the reasonable doubt standard demands.

Therefore, the Michigan Court of Appeals did not "arrive[] at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "decide[] a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams,* 529 U.S. at 412-13.

## Conclusion

Accordingly, for the forgoing reasons we AFFIRM in part the district court's denial of the writ for Burton's Fifth Amendment challenge, and REVERSE in part and VACATE the granting of the writ of habeas corpus as there was no constitutional error.

**KAREN NELSON MOORE, Circuit Judge, dissenting.** Along with the district judge, I believe that the reasonable-doubt instructions given to the jury in this case were unconstitutional, and I respectfully dissent from the majority's reversal of the grant of the writ of habeas corpus.

"The reasonable-doubt standard [articulated in *In re Winship*, 397 U.S. 358, 361-64 (1970)] 'plays a vital role in the American scheme of criminal procedure.'" *Cage v. Louisiana*, 498 U.S. 39, 39-40 (1990) (quoting *Winship*, 397 U.S. at 363). The issue in this case is "whether there is a reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet the *Winship* standard." *Victor v. Nebraska*, 511 U.S. 1, 6 (1994). The majority opinion begins by addressing the question whether the state trial court's use of the phrase "could assign a true, substantive reason to" impermissibly heightened the level of doubt required to acquit Burton. Majority Op. at 12. After explaining that "substantive" is synonymous with "substantial," the majority opinion concludes that because there was no other word modifying substantive, *id*. at 13, and because it was used to distinguish the proper level of doubt from a "'kind of flimsy, fanciful out-there philosophy,'" this term did not misstate the proper reasonable-doubt standard, *id*. at 17 (quoting trial court).

However, the majority opinion fails to read the phrase "true, substantive reason" in the context of the reasonable-doubt instructions as a whole. "[T]he rest of the instruction given in [Burton's] case lends content to the phrase." *Victor*, 511 U.S. at 14. To begin, the state trial court's reference to reasonable doubt in the context of the O.J. Simpson trial was not merely "unnecessary," Majority Op. at 12, but it also brought up a controversial and emotionally-charged topic that likely affected the jury's view of the reasonable-doubt standard. In addition, the state trial judge went to

great lengths to emphasize that the jurors should not be too strict in their expectation of proof

beyond a reasonable doubt; the judge repeatedly stated that if the reasonable-doubt standard were

too demanding then "we might as well all go home." J.A. at 72 (Trial Tr. at 20). Finally, the state

trial judge advised the jurors to "relax" in coming to their conclusion as to reasonable doubt. J.A.

at 72. As the federal district court explained:

> Determining the guilt or innocence of an accused person is serious business. It is not
> a time to "relax"; rather, it calls for critical attention to the presentation of the
> evidence, concentration, and even a modicum of skepticism. The jury must be
> mentally conditioned to demand the degree of proof from the prosecutor required by
> the Constitution before it can be satisfied to return a guilty verdict. Otherwise, the
> idea of "proof beyond a reasonable doubt," this ancient and venerable safeguard,
> would lose its potency as a "prime instrument" insuring against convicting the
> innocent.

J.A. at 122-23 (Dist. Ct. Op. and Order Conditionally Granting Pet. for Writ of Habeas Corpus at

19-20).

"It is critical that the moral force of the criminal law not be diluted by a standard of proof

that leaves people in doubt whether innocent men are being condemned." *Winship*, 397 U.S. at 364.

The state trial court's reference to the O.J. Simpson trial, its encouragement not to interpret the

reasonable-doubt standard too strictly, and its direction to relax all served to lower the prosecution's

burden in this case. "It seems that a central purpose of the instruction[s] [was] to minimize the

jury's sense of responsibility for the conviction of those who may be innocent." *Victor*, 511 U.S.

at 35 (Blackmun, J., concurring in part and dissenting in part). The combination of these statements

with the phrase "true, substantive doubt" renders the state trial court's reasonable-doubt instructions

unconstitutional.[5] *See Cage*, 498 U.S. at 41 (considering the cumulative effect of the questionable phrases in holding that the instructions as a whole were unconstitutional). I believe that the reasonable-doubt instructions given to the jury in this case violated the Due Process Clause, and I would accordingly affirm the district court's judgment granting habeas relief.

---

[5]The majority points out that the instruction at issue was provided "before the empaneling of the jury." Majority Op. at 18. However, even if the later instruction was permissible, it was premised with the statement, "[a]nd you know we talked about reasonable doubt." J.A. at 96 (Trial Tr. at 135). This not only incorporated the previous instructions by reference, but specifically encouraged the jurors to recall the earlier statements.