*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 08a0023p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

RANDOLPH WILKINS,

    *Petitioner-Appellant,*

  *v.*

             No. 07-3339

DEB TIMMERMAN-COOPER, Warden,

    *Respondent-Appellee.*

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 06-00027—Gregory L. Frost, District Judge.

Argued: November 28, 2007

Decided and Filed: January 14, 2008

Before: BOGGS, Chief Judge; GIBBONS, Circuit Judge; BELL, Chief District Judge.[*]

_____

### COUNSEL

**ARGUED:** Theresa G. Haire, PUBLIC DEFENDER'S OFFICE, Columbus, Ohio, for Appellant.
M. Scott Criss, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellee.
**ON BRIEF:** Theresa G. Haire, PUBLIC DEFENDER'S OFFICE, Columbus, Ohio, for Appellant.
M. Scott Criss, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellee.

_____

### OPINION

_____

  JULIA SMITH GIBBONS, Circuit Judge. This appeal arises out of the district court's dismissal of petitioner-appellant Randolph Wilkins's ("Wilkins") petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. The district judge held that the use of videoconferencing at Wilkins's parole revocation hearing did not violate his rights to due process and to confront his accuser and therefore did not violate the Fifth and Sixth Amendments.

  For the reasons set forth below, we affirm the district court's decision.

_____

[*] The Honorable Robert Holmes Bell, Chief United States District Judge for the Western District of Michigan, sitting by designation.

I.

We rely upon the factual findings of the state appellate court on direct review. *Girts v. Yanai*, 501 F.3d 743, 749 (6th Cir. 2007); s*ee also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.")  The Ohio Tenth District Court of Appeals ("state court of appeals") summarized the facts and procedural history as follows:

> On December 31, 1997, while on parole from a 1985 rape conviction, Wilkins was indicted by the Summit County Grand Jury for the rape of Shauneeka Mishauna Wilson. The alleged rape occurred on or about July 25, 1997. Wilson was ten years of age at the time.
>
> Wilkins was returned to the custody of the Ohio Department of Rehabilitation and Correction ("ODRC") as a parole violator. The case was tried to a jury and, on September 3, 1998, Wilkins was found guilty. Wilkins was sentenced to life in prison and found to be a sexual predator. Wilkins appealed, and on September 29, 1999, the Ninth District Court of Appeals reversed Wilkins's conviction. The Ninth District Court of Appeals found that the trial court erred in admitting testimony concerning Wilkins's 1985 rape conviction. *State v. Wilkins* (1999), 135 Ohio App.3d 26, 732 N.E.2d 1021. The court held that the testimony did not meet the requirements of Evid. R. 404(B) or R.C. 2945.59 and, as such, was inflammatory and prejudicial. *Id.*, 135 Ohio App.3d at 32, 732 N.E.2d 1021. As a result, the case was remanded to the Summit County Court of Common Pleas. On September 15, 2000, the state dismissed the rape charge against Wilkins.
>
> ODRC continued to hold Wilkins as a recommissioned parole violator at the Southern Ohio Correctional Facility ("SOCF"), because he allegedly committed the following violations: (1) he had sexual relations with Wilson who was ten years old at the time of the encounter; (2) he changed his residence without permission of his parole officer; (3) he failed to report to his parole officer; (4) he had contact with a female under the age of 21 without permission of his parole officer; (5) he operated a motor vehicle in which a female was the passenger, without the permission of his parole officer; and (6) he was in the state of Louisiana without the permission of his parole officer.
>
> On October 27, 2000, Wilkins was notified that he was subject to a parole revocation hearing to be conducted via videoconferencing. On November 14, 2000, Wilkins filed a complaint for injunctive relief and motion for temporary restraining order, asserting that under *Morrissey v. Brewer* (1972), 408 U.S. 471, 92 S. Ct. 2593, 33 L. Ed.2d 484, the scheduled revocation hearing by videoconferencing would violate Wilkins's right to confront witnesses under the Fifth and Fourteenth Amendments of the United States Constitution. Appellees filed a memorandum opposing Wilkins's motion for temporary restraining order. Thereafter, the trial court conducted an oral hearing to allow both Wilkins and appellees to present their arguments. At the hearing, the trial court asked:
>
>> "THE COURT: Is there any particular reason with this case? I mean why this case? Is there a reason? Is Shauneeka-what was her age, the alleged rape victim, is she going to be a witness, and is she as I remember young, is she 12, 13, something like that?

"MR. HARDWICK: Your Honor, I believe she is 14 according to the birth date in the criminal transcript. She's currently 14.

"MR. ZETS: That's correct, Your Honor. There's no specific reason why this case as opposed to any other case. It was just a determination was made they were going to use it in this case. I don't think they should be denied the ability with it-starting with this case going forward with it or this is one of the first few it's being used.

"The whole idea in the plaintiff's argument is based upon protecting identity of witnesses, that's not an issue in this case. Because we are not talking about not allowing the plaintiff to confront those witnesses, it's the method by which they confront those witnesses. So the fact that the victim in this case will be in Akron, Ohio, by television-granted she is tender age, I believe she has-she might be somewhat mentally deficient or mentally challenged, in that respect I don't think that plays a huge role in determining whether or not they go to Lucasville or people in Lucasville go to Akron. It's just technology the department would like to use under *Morrissey v. Brewer*."

On November 20, 2000, appellees conducted the parole revocation hearing. Wilkins, his counsel, and the hearing officer were present at SOCF. The parole officer and the state's witnesses were present and testified via videoconferencing technology from Akron, Ohio. On December 5, 2000, the trial court denied Wilkins's motion for a temporary restraining order. On December 8, 2000, the Parole Board determined that Wilkins had violated his parole.

On December 15, 2000, Wilkins filed an amended complaint for injunctive relief alleging that the use of the videoconferencing technology during his parole revocation hearing deprived him of the right to confront witnesses under the Fifth and Fourteenth Amendments of the United States Constitution. Appellees responded with a motion to dismiss for failure to state a claim upon which relief can be granted. Civ. R. 12(B)(6). On March 7, 2001, the trial court granted appellees' motion to dismiss, stating that "[t]hrough the use of video-conferencing equipment, plaintiff was able to view and question the witnesses, despite his not being physically present in the same room. Also, the due-process and confrontation rights in a parole-revocation hearing do not rise to the level of those in a trial proceeding."

Wilkins appealed to this court. In *Wilkins v. Wilkinson* (Jan. 15, 2002), Franklin App. No. 01AP-468, 2002 WL 47051, this court reversed, holding that Wilkins had alleged sufficient facts to state a constitutional claim against appellees. Specifically, this court noted that Wilkins alleged that the video camera was positioned in such a way as to prevent him and his counsel from making eye contact with the witnesses, and that the video picture froze on several occasions, thereby preventing Wilkins and the hearing officer from observing the demeanor of the witnesses. These allegations were sufficient to allow Wilkins's claim to survive a Civ. R. 12(B)(6) motion. However, this court did not address whether the use of videoconferencing technology in a parole revocation hearing would satisfy the Confrontation Clause, when the equipment and procedure utilized is functionally equivalent to that accorded live, in-person testimony.

On remand to the trial court, the parties filed cross-motions for summary judgment. The parties attached as exhibits to the motions, among other things, videotapes of the parole revocation proceedings, the Release Violation Hearing Summary prepared by Hearing Officer Trayce Thalheimer, Thalheimer's affidavit, and the deposition transcripts of Chief Hearing Officer Cynthia Mausser and Thalheimer. The Release Violation Hearing Summary provided:

> "For the panel[']s information this hearing was held at SOCF where the inmate, HO, public defender and public defender[']s witness were present. The APA [Adult Parole Authority], and their witness' [sic] were at the Akron office. This hearing was held via teleconference. This was against the wishes of the PD and a good deal of time was used discussing the objection of the hearing. It was determined in court that the hearing could take place. The PD wanted all parties to be aware that she objected to the way the proceedings were taking place and the fact that the victim would not be present face to face with the subj. in the room during testimony. The decision to hold the hearing this way was agreed to with the APA and the Chief Hearing officer. This was due to the mental and emotional status of the victim."

The trial court granted appellees' motion for summary judgment, finding that: (1) appellees had shown good cause for using the videoconferencing technology; (2) the utilization of videoconferencing technology sufficiently permitted Wilkins and his counsel to observe and confront the witnesses; and (3) in any event, Wilkins admitted facts establishing most of the alleged parole violations.

Wilkins appealed, assigning as error the following:

> "FIRST ASSIGNMENT OF ERROR: In violation of Randolph Wilkins['s] right to due process of law, the trial court erred in finding as a matter of law, that Respondents showed good cause for holding the hearing by video conference due to the age and mental condition of one witness and did not require any showing of cause for the other three witnesses who testified by videoconference.

> "SECOND ASSIGNMENT OF ERROR: The trial court erred in violation of Mr. Wilkins's right to due process of law by finding that this videoconference was a sufficient approximation of a face-to-face encounter and that Dr. Stephen Acker's report was insufficient to bar summary judgment for Respondents.

> "THIRD ASSIGNMENT OF ERROR: In violation of Randolph Wilkins['s] right to due process of law, the trial court erred in finding that Mr. Wilkins's admissions as to non-criminal, technical parole violations obviated any problems with confrontation regarding the rape allegations at his parole revocation hearing."

The state court of appeals explained that while a parolee is granted fewer due process rights than a trial defendant, there still is a minimum due process threshold. It stated that the videoconferencing technology used was "functionally equivalent to live, in-person testimony." It explained that the trial court did not err in its "determination that the use of videoconferencing technology sufficiently permitted Wilkins and his counsel to observe and confront the witnesses, despite some minor

technical difficulties that were resolved during the hearing." It added that Wilkins admitted four of six parole violations, which satisfied due process, at least for the admitted violations. The use of videoconference at the parole revocation hearing thus satisfied the Confrontation Clause. On October 13, 2004, the Ohio Supreme Court declined jurisdiction and "dismisse[d] the appeal as not involving any substantial constitutional question."

On January 11, 2006, Wilkins filed a petition under 28 U.S.C. § 2254 for writ of *habeas corpus* by a person in state custody. On December 20, 2006, the United States Magistrate Judge issued a report and recommendation in which he found that Wilkins had not rebutted the state appellate court's factual determination that "use of videoconferencing technology permitted free and unimpeded visual and auditory communication between the hearing officer, witnesses, Wilkins, and the respective counsel" and was "functionally equivalent to live, in-person testimony." The magistrate judge concluded that Wilkins failed to establish that the state court decision was either (1) contrary to or an unreasonable application of federal law, as determined the Supreme Court or (2) based upon unreasonable factual determinations.

On February 12, 2007, the district court adopted the report and recommendation, overruling objections to it. The district court determined that neither a due process violation nor a Confrontation Clause violation occurred and that the state court of appeals' factual findings were not unreasonable.

II.

A.

The court reviews *de novo* a district court's decision regarding a writ of *habeas corpus*. *Dando v. Yukins*, 461 F.3d 791, 795-96 (6th Cir. 2006) (citing *Wolfe v. Brigano*, 232 F.3d 499, 501 (6th Cir. 2000)). Factual determinations made by the district court are reviewed for clear error, except where the factual findings are based on the district court's review of state court trial transcripts and other court records, in which case they are considered *de novo*. *Id.* at 796 (citing *Mackey v. Russell*, 148 F. App'x. 355, 359 (6th Cir. 2005) and *Wolfe*, 232 F.3d at 501). "In a proceeding instituted by an application for a writ of *habeas corpus* by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may not grant *habeas* relief on any claim that was adjudicated on the merits in any state court unless the adjudication of the claim either: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "'[C]learly established Federal law as determined by the Supreme Court of the United States' . . . . refers to the holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A decision is contrary to clearly established law when it is "diametrically different, opposite in character or nature, or mutually opposed." *Id.* at 405 (quotation marks omitted). In order to have an "unreasonable application of . . . clearly established Federal law," the state-court decision must be "objectively unreasonable," not merely erroneous or incorrect. *Id.* at 409, 412.

"This standard requires the federal courts to give considerable deference to state-court decisions." *Forensic v. Birkett*, 501 F.3d 469, 472 (6th Cir. 2007) (citation omitted). AEDPA

essentially says to federal courts, "Hands off, unless the judgment in place is based on an error grave enough to be called 'unreasonable.'"  *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998).

B.

In *Morrissey v. Brewer*, the Supreme Court held that "the revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations."  408 U.S. 471, 480 (1972).  The parolee is entitled to " an informal hearing structured to assure that the finding of a parole violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the parolee's behavior."  *Id.* at 484.  The *Morrissey* court announced that the minimum requirements of due process in relation to a parole revocation hearing are:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Id.* at 489.  The Court continued, "We emphasize there is no thought to equate this second stage of parole revocation to a criminal prosecution in any sense."  *Id.*  It explained, "We have no thought to create an inflexible structure for parole revocation procedures.  The few basic requirements set out above, which are applicable to future revocations of parole, should not impose a great burden on any State's parole system."  *Id.* at 490.[1]

In *Gagnon v. Scarpelli*, the Supreme Court considered due process rights in probation revocation hearings, explaining that parole revocation and probation revocation are "constitutionally indistinguishable."  411 U.S. 778, 782 n.3 (1973).  It added:

> An additional comment is warranted with respect to the rights to present witnesses and to confront and cross-examine adverse witnesses.  Petitioner's greatest concern is with the difficulty and expense of procuring witnesses from perhaps thousands of miles away.  While in some cases there is simply no adequate alternative to live testimony, we emphasize that we did not in *Morrissey* intend to prohibit use where appropriate of the conventional substitutes for live testimony, including affidavits, depositions, and documentary evidence.  Nor did we intend to foreclose the States from holding both the preliminary and the final hearings at the place of violation or from developing other creative solutions to the practical difficulties of the *Morrissey* requirements.

---

[1]Wilkins emphasizes inapplicable language from *Morrissey* in which the Supreme Court discusses preliminary hearings, not revocation hearings:

> At the hearing the parolee may appear and speak in his own behalf; he may bring letters, documents, or individuals who can give relevant information to the hearing officer. On request of the parolee, person who has given adverse information on which parole revocation is to be based is to be made available for questioning in his presence. However, if the hearing officer determines that an informant would be subjected to risk of harm if his identity were disclosed, he need not be subjected to confrontation and cross-examination.

*Id.* at 487 (discussing the preliminary hearing).

*Id.* at 782 n.5.

Wilkins argues that the state court of appeals unreasonably applied *Morrissey* in determining that videoconferencing did not violate the Confrontation Clause or Wilkins's due process rights.[2,3] However, given that defendants have fewer rights in parole revocation hearings than in criminal trials, the state court of appeals did not unreasonably apply *Morrissey*, and its decision is not "objectively unreasonable." *See Williams*, 529 U.S. at 409. The Supreme Court specified there is no "inflexible structure" for a parole revocation hearing. *Morrissey,* 408 U.S. at 490. Moreover, the Court also encouraged "creative solutions" to avoid Confrontation Clause violations. *Gagnon*, 411 U.S. at 782 n.5. Therefore, it was not objectively unreasonable for the state court of appeals to hold that videoconferencing, when used in a manner that allows the defendant to confront and hear his accusers in real time, presents no Confrontation Clause violation.

While *Morrissey* specifically provided for the right to "confront and cross-examine adverse witnesses" absent a showing of good cause, 408 U.S. at 489, the Supreme Court clarified in *Gagnon* that it "did not in *Morrissey* intend to prohibit use where appropriate of the conventional substitutes for live testimony, including affidavits, depositions, and documentary evidence," 411 U.S. at 782 n.5. Given that the Supreme Court held that these types of statements can substitute for live testimony in some cases, it is not "objectively unreasonable" to conclude that it would have approved of videoconferencing. While videoconferencing was not available in the early 1970s, and thus was not contemplated by the Supreme Court in *Morrissey*, it provides a defendant with the right to observe and respond to the testimony of his accuser. Wilkins also had the right to cross examine his accusers at the hearing. It is not "objectively unreasonable" to conclude it is just the sort of "creative solution" envisioned by the Supreme Court. Nor was the decision contrary to *Morrissey* itself. *Morrissey* does not address videoconferencing, and it states that parole revocation hearings do not provide the "full panoply of rights" available at criminal trials. 408 U.S. at 480.

Wilkins also challenges the state court of appeals' factual finding that videoconferencing was sufficiently similar to live testimony to permit Wilkins and his counsel to observe and confront witnesses. Wilkins contends that in making this determination, the state court of appeals ignored "unrebutted expert testimony to the contrary." He argues that the testimony of his expert, Dr. Stephen Acker, who examined the videotape following the hearing, demonstrated that a participant's ability to hear and interact was diminished when compared to a face-to-face hearing. As Dr. Acker argues, communication was not as good as at a face-to-face hearing, because, for example, the camera and monitor placement caused several participants to be observed in profile rather than directly and the audio was occasionally muted. A review of Dr. Acker's report, however, reveals to us that Wilkins confronted his accusers because he observed, heard, and questioned them in real time. Wilkins has not met his burden of rebutting our presumption that this factual finding is correct. *See* 28 U.S.C. § 2254(e)(1). The conclusion that the use of videoconferencing here was

---

[2] Wilkins cites several court of appeals decisions in support of his argument. These cases include *Stoner v. Sowders*, 997 F.2d 209 (6th Cir. 1993), and *United States v. Burke*, 345 F.3d 416 (6th Cir. 2003). We do not consider these cases because we cannot "look to lower federal court decisions in deciding whether the state decision is contrary to, or an unreasonable application of, clearly established law." *Herbert,* 160 F.3d at 1135. (citation omitted).

[3] Wilkins also argues that the videoconference hearing did not satisfy *Morrissey*'s requirement of showing "good cause" when the state denies a parolee's confrontation right at a parole revocation hearing. The state trial court determined in the alternative that the state court defendants had shown good cause for using videoconferencing because Wilson was only fourteen years old at the time of her testimony and potentially was "mentally challenged." In addition, she resided several hundred miles away from the correctional facility to which she would have had to travel to testify. The state appellate court and the district court did not reach this issue. Although it is unclear to what extent this finding of good cause was driven by *post hoc* rationale, we need not reach the "good cause" issue given our deference to the state court conclusion that Wilkins's Confrontation Clause rights were not violated.

"functionally equivalent" to live testimony, was not an "unreasonable determination of the facts in light of the evidence presented in the state court proceedings." *See* 28 U.S.C. § 2254(d).

## III.

For the foregoing reasons, we affirm the judgment of the district court.