NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0787n.06
Filed: December 29, 2008

No. 06-5496

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| RODNEY TIPTON, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| HOWARD CARLTON, Warden, | ) | EASTERN DISTRICT OF TENNESSEE |
| | ) | |
| Respondent-Appellee. | ) | |
| | ) | |

Before: GIBBONS and COOK, Circuit Judges; and STEEH, District Judge.[*]

**GEORGE CARAM STEEH, District Judge.** Appellant Rodney Tipton was found guilty

by a Tennessee state court jury for the January 7, 1991 aggravated robbery and rape of Cynthia Blair.

Blair identified Tipton in a January 9, 1991 photo line-up conducted by state police, and later at trial.

Tipton's state court appeal and motions for post-conviction relief were denied following extensive

hearings. The federal district court dismissed Tipton's habeas petition on March 10, 2006, and

denied Tipton's motion for a certificate of appealability on January 12, 2007. A circuit court judge

granted a limited certificate of appealability on the issues of whether Tipton's convictions were

obtained by a suggestive photographic line-up and in-court identification, whether the prosecutor

---

[*]The Honorable George Caram Steeh, United States District Judge for the Eastern District
of Michigan, sitting by designation.

-1-

withheld exculpatory evidence, and whether Tipton was denied effective assistance of trial counsel.

For the reasons set forth below, we affirm the dismissal of the petition.

I.

Rodney Tipton was found guilty by a jury in Tennessee's Blount County Criminal Court on January 14, 1992 of one count of aggravated rape and one count of aggravated robbery for the January 7, 1991 sexual assault of Cynthia Blair. The factual circumstances of the crimes are taken from the state court decision affirming the denial of Tipton's motion for post-conviction relief, *Tipton v. State of Tennessee*, No. E2001-00001-CCA-R3-PC, 2002 WL 1400058 (Tenn.Crim.App. June 18, 2002), *perm. app. denied*, (Tenn. Dec. 23, 2002).

> On January 7, 1991, around 11:30 p.m., the victim, Cynthia Blair, was shopping at the Red Food grocery store, located on West Broadway in Maryville, Tennessee. She left the store and walked to her car. Upon entering her car, a second vehicle pulled up behind her to block her exit. A man, later identified as co-defendant, Robert Allen Davis, approached her vehicle and said, "Move over, bitch." Davis was wearing a ski-mask and carrying a revolver. She gave him the keys as demanded, and he started the car and drove out of the lot. Then, Davis ordered her to blindfold herself with a beach towel she had in the car. A second vehicle followed the victim's car. After driving for some distance, Davis stopped. The second vehicle stopped also, and a second man, later identified as the Appellant [Tipton], got into the car with the victim and Davis. Davis and the Appellant drove the victim around at gunpoint, stopping at several different locations. During these stops and while inside the vehicle, the victim was vaginally and anally raped. Also, the victim was forced to perform fellatio and forcibly had cunnilingus performed on her.
>
> The victim was then taken to a motel across the North Carolina state-line. Davis left the vehicle to get a motel room, leaving the victim alone in the vehicle with the Appellant, who was very intoxicated and about to pass out. She peeked from underneath the ski-mask covering her face and saw the gun on the dashboard. She tried to grab the weapon and throw it out the window. The Appellant caught her trying to grab the gun and a struggle ensued. During this struggle, the victim's mask came off, and she saw the appellant's face. Once inside the hotel room, she was again raped. During the early morning hours of January 8th, the assailants left the

> North-Carolina [sic] motel taking the victim with them. On this same day, the Appellant and Davis separated company leaving the victim with Davis. Thereafter, Davis wrecked the vehicle. He was successful, however, in obtaining assistance from a local resident in transporting himself and the victim to the Fort Loundon Motel, in Vonore, Tennessee. Davis and the victim entered the room where Davis eventually passed out on the bed. At this time, the victim escaped to the hotel manager's office, where the manager called the police for assistance. After the police arrived, Davis was taken into custody, and the victim was transported to the Sweetwater Hospital for medical attention.

*Id*. at *1.

On January 9, 1991, Blair went to the Maryville Police Department where Officer David Graves sketched a composite picture of Blair's unknown assailant, who remained at large. Blair was then transported to the Blount County Sheriff's Department where she participated in a photo line-up conducted by Detective Randall Mercks. Mercks placed Tipton's photograph within an array of six photographs based on independent information he received from a Detective Tindell that Tipton was a suspect. Blair identified Tipton from an eight-year-old booking photo, telling Detective Mercks "that I believed that was him, but I would like to see him in person to make sure." The January 9, 1991 photo array used by Mercks is not available for the court's review because, according to an October 7, 2004 Order of the Tennessee Court of Criminal Appeals, "the complete record was apparently lost while in the care and custody of defense counsel [for co-defendant Davis] and through no fault of the state."

Blair identified Tipton at the state court trial. No physical evidence was introduced linking Tipton to the crimes. On defense counsel's suggestion, Tipton stood up while being identified by Blair. Counsel later objected when the prosecutor raised in closing argument that Tipton had "stood up on his own, [] stood right up" when identified by Blair. Tipton's counsel immediately challenged

the prosecutor's characterization of the event, explaining "I had Mr. Tipton stand up . . . ." The court

sustained the objection and instructed the jury:

> THE COURT: Ladies and gentlemen, as I told you earlier, argument is not evidence. If you hear any argument put to you by any of the attorneys that you think is not supported by the evidence and what you find the facts to be, then you are entitled to ignore that. So, -- and I will so instruct you at the close of argument.

Defense counsel testified at a November 3, 1997 post-conviction hearing that, in suggesting that

Tipton stand, "we were taking sort of a head-on approach to Ms. Blair in this case and that, in my

mind and what I believe in the Jury's minds there was no secret that Ms. Blair had been referring for

the last hour to Rodney Tipton."

Following his January 14, 1992 conviction, Tipton was effectively sentenced to a thirty-three

year prison term. *Tipton*, 2002 WL 1400058, at *1. Tipton and co-defendant Davis were later

convicted in federal court for kidnapping and transporting their victim across state lines, 18 U.S.C.

§ 1201(a)(1), and for using a firearm during a crime of violence, 18 U.S.C. § 924(c). *See United

States v. Tipton*, 11 F.3d 602, 603 (6th Cir. 1993) (affirming federal convictions). Tipton's state

court convictions were upheld on direct appeal, *State of Tennessee v. Davis*, 872 S.W.2d 950 (Tenn.

Crim. App. 1993), *perm. app. denied*, (Tenn. Sept. 7, 1993), and on Tipton's state court petition for

post-conviction relief. *Tipton*, 2002 WL 1400058, at *13.

Tipton filed his petition for federal habeas relief on August 14, 2003. The district court

granted appellee/respondent Howard Carlton's motion for summary judgment on March 10, 2006,

dismissed the petition, and denied a certificate of appealability. *Tipton v. Carlton*, No. 3:03-CV-434,

2006 WL 587595 (E.D. Tenn. March 10, 2006). Tipton filed a timely notice of appeal and a motion

for certificate of appealability on April 6, 2006.  Fed. R. App. P. 4(a)(1)(A); 28 U.S.C. § 2253(a).

The district court denied Tipton's motion for a certificate of appealability on January 12, 2007.

Circuit Court Judge Moore thereafter granted a limited application for a certificate of appealability

on the following claims:

> 1.  whether trial counsel rendered ineffective assistance by failing to discover an FBI report showing that the victim did not positively identify Tipton at the first photo array, by failing to object to false evidence of prior bad acts, by failing to object to the prosecutor's comments on Tipton's post-arrest silence, and by ordering Tipton to stand up at trial so that the victim could identify him;
>
> 2.  whether the prosecutor committed misconduct by withholding exculpatory evidence; and
>
> 3.  whether Tipton's convictions were obtained by a suggestive photographic line-up and in-court identification.

## II.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs habeas

corpus review of state court decisions.  28 U.S.C. § 2254(d) of the AEDPA states in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceedings.

Under the "contrary to" clause of § 2254(d)(1), a federal court may grant a writ of habeas

corpus if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a

question of law, or if the state court decided a case differently than the Supreme Court had decided

an issue on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06

(2000). Under the "unreasonable application" clause of § 2254(d)(1), a federal court may grant

habeas relief if the state court identified the correct governing legal principle from Supreme Court

decisions, but unreasonably applied that principle to the facts. *Id*. at 407-08. Relief is also available

if the state court decision unreasonably extended or unreasonably refused to extend a legal principle

from Supreme Court precedent to a new context. *Id*. at 407; *Arnett v. Jackson*, 393 F.3d 681, 686

(6th Cir. 2005). Ultimately, "the issue is whether the state court's application of clearly established

federal law was 'objectively reasonable.'" *McAdoo v. Elo*, 365 F.3d 487, 493 (6th Cir. 2004)

(quoting *Williams*, 529 U.S. at 409).

This court reviews the decision of the federal district court *de novo*. *Wilkins v. Timmerman-Cooper*, 512 F.3d 768, 773 (6th Cir. 2008). "Factual determinations made by the district court are

reviewed for clear error, except where the findings are based on the district court's review of state

court trial transcripts and other court records, in which case they are considered *de novo*." *Id*. at 774

(citing *Dando v. Yukins*, 461 F.3d 791, 796 (6th Cir. 2006)). "In a proceeding instituted by an

application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State

court, a determination of a factual issue made by a state court shall presumed to be correct. The

applicant shall have the burden of rebutting the presumption of correctness by clear and convincing

evidence." *Id*. (quoting 28 U.S.C. § 2254(e)(1)).

III.

A.

"Due process 'prohibits the use of identifications which under the totality of the circumstances are impermissibly suggestive and present an unacceptable risk of irreparable misidentification.'" *United States v. Crozier*, 259 F.3d 503, 510 (6th Cir. 2001) (quoting *Carter v. Bell*, 218 F.3d 581, 605 (6th Cir. 2000)). "A conviction based on identification testimony that follows a pretrial identification violates the defendant's constitutional right to due process whenever the pretrial identification procedure is so 'impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'" *Ledbetter v. Edwards*, 35 F.3d 1062, 1070 (6th Cir. 1994) (quoting *Thigpen v. Cory*, 804 F.2d 893, 895 (6th Cir. 1986) (quoting *Simmons v. United States*, 390 U.S. 377, 384 (1968))). A two-part test is employed in assessing the validity of a pretrial identification. *Ledbetter*, 35 F.3d at 1070. The court first considers whether the procedure was unduly suggestive. *Id*. at 1070-71 (citing *Thigpen*, 804 F.2d at 895). The petitioner bears this burden of proof. *Id*. at 1071 (citing *United States v. Hill*, 967 F.2d 226, 230 (6th Cir. 1992)). If the procedure is determined to be unduly suggestive, the court then proceeds to the second step of the analysis to determine whether the pretrial identification was nonetheless reliable under the totality of the circumstances. *Crozier*, 259 F.3d at 510 (citing *Ledbetter*, 35 F.3d at 1070).

i.

The Tennessee Court of Criminal Appeals reviewed the January 9, 1991 photographic array and found it was not unduly suggestive:

> Here, the photographic array consisted of six photographs of men with characteristics very similar to appellant Tipton. All of the individuals had dark hair, a mustache and were Caucasian, just as appellant Tipton. All of the photographs were of men within the appellant's age group. As pointed out by defense counsel, the head shot of appellant Tipton was slightly larger than the other photographs in the

> array. However, the size of the head shots of the various individuals in Exhibit 1, which contains the photographs of the array, clearly shows that the head shots varied in size. Therefore, appellant Tipton's photograph would not be unconstitutionally suggestive.

*Davis*, 872 S.W.2d at 956. The state court's factual findings regarding the physical characteristics of the array are entitled to a presumption of correctness. *Timmerman-Cooper*, 512 F.3d at 774. Tipton's proffered testimony of Detective Mercks, who conceded at a November 13, 1991 state court hearing that he noticed Tipton's head shot was "significantly larger than the other pictures" when he assembled the array, falls short of the "clear and convincing evidence" needed to displace the presumption that the state court's characterization of Tipton's photo as "slightly larger than the other photographs in the array" was factually correct. *Id*.

Tipton argues he is entitled to a presumption that the January 9, 1991 photo array was unduly suggestive because the state court records that included the array have been lost, making the array unavailable for this court's review. In *Smith v. Campbell*, 781 F.Supp. 521 (M.D. Tenn. 1991), *aff'd on other grounds*, Nos. 91-9502, 92-5016, 1992 WL 97958 (6th Cir. May 8, 1992), the district court applied a presumption of undue suggestiveness in favor of the petitioner after finding that the Tennessee Bureau of Investigation failed to preserve the photo array, and that neither the defendant nor the state court had ever seen the array. *Id*. at 527. Similarly, in *United States v. Honer*, 225 F.3d 549 (5th Cir. 2000), a presumption of undue suggestiveness was applied in favor of the defendant on appeal because the federal trial court never saw the challenged photo array. *Id*. at 543. *See also Branch v. Estelle*, 631 F.2d 1229, 1235 (5th Cir. 1980) (applying presumption of undue suggestiveness where the trial court was precluded from examining the photo array). Here, the

Tennessee Court of Criminal Appeals reviewed the January 9, 1991 photo array as proffered by Tipton and ruled on its suggestiveness on May 27, 1993, well before the array was lost in February 1997, following co-defendant Davis' counsel's withdrawal of the state court record. *Davis*, 872 S.W.2d at 956. Unlike the circumstances in *Smith*, this is not a situation where "the court would be obligated to substitute the opinion of law enforcement officers for its own impartial judgment regarding the suggestiveness of the photo arrays." *Smith*, 781 F.Supp. at 528. The state court rendered its impartial judgment after reviewing the photo array. *Smith*, *Honer*, and *Branch*, relied upon by Tipton, are distinguishable on their facts.

Contrary to Tipton's argument, the Sixth Circuit panel in *Kordenbrock v. Scroggy*, 919 F.2d 1091 (6th Cir. 1991), did not "implicitly" apply a presumption of undue suggestiveness by proceeding directly to the second step of the pre-trial identification analysis and finding that the pretrial identification was constitutionally reliable. *Id*. at 1103. To the contrary, "[t]he misplacement or destruction of the display does not entitle [a petitioner] to a presumption that a constitutional violation has occurred." *Id*. Cases relied upon by Tipton involving lost trial transcripts are inapplicable and unpersuasive. *See Bergerco v. Shipping Corp. of India, Ltd.*, 896 F.2d 1210 (9th Cir. 1990); *Herndon v. City of Massillon*, 638 F.2d 963 (6th Cir. 1981). Tipton is not entitled to a presumption that the January 9, 1991 photo array was unduly suggestive.

Whether a photo line-up was unduly suggestive is decided under the totality of the circumstances. *Hutsell v. Sayre*, 5 F.3d 996, 1005 (6th Cir. 1993). Applying the unrebutted presumption of correctness to the state court's findings that "the head shot of appellant Tipton was slightly larger than the other photographs in the array," and that "the head shots of the various

individuals . . . varied in size," *Davis*, 872 S.W.2d at 956, it was objectively reasonable for the state court to conclude that the January 9, 1991 photo array was not unduly suggestive. *McAdoo*, 365 F.3d at 493.

ii.

Even if the January 9, 1991 photo array had been unduly suggestive, this court finds that the pre-trial identification was nonetheless reliable under the circumstances. Five factors are considered in assessing the reliability of a pretrial identification: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention at the time of the observation; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty of the witness when confronted by the criminal; and (5) the length of time between the crime and confrontation. *Ledbetter*, 35 F.3d at 1071 (citing *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977) and *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972)). On determining in the first step of analysis that the photo array was not unduly suggestive, the Tennessee Court of Criminal Appeals did not perform this second step of analysis. *See Davis*, 872 S.W.2d at 956; *Tipton*, 2002 WL 1400058, at \*11.

Blair's state court testimony demonstrates she both had, and took, the opportunity to view Tipton's face at the time of the crime. Blair viewed Tipton for three to five seconds while facing him at close range while sitting on his lap. A security light aided her viewing. The totality of the circumstances do not indicate, as Tipton argues, that Blair's attention was distracted by fatigue and fear during this three to five second viewing. One day after escaping from her assailants, Blair was able to describe Tipton's facial features to Officer Graves, who sketched a composite drawing. Within that same 24-to-48-hour period, Blair identified Tipton's photo in the January 9, 1991 photo

-10-

array even though the photograph was eight years-old. It is not surprising that, although Blair "believed that was him," she would like to see Tipton "in person to make sure." Taken in full context, Blair testified:

> Q. Now, describe for us what happened at the photo line-up. When you were presented with these pictures, what did you do?
>
> A. [by Blair] I looked at them very carefully, wanted to make sure that I chose the right person. I didn't want to choose a picture that was not the right person, so I took my time. I looked very carefully. And I now know that I did pick Mr. Tipton's picture. And I told the officer that I believed that was him, but I would like to see him in person to make sure.

Considering *de novo* the five factors for assessing the reliability of Blair's pretrial identification of Tipton, the pretrial identification was reliable under the totality of the circumstances. *Timmerman-Cooper*, 512 F.3d at 774; *Crozier*, 259 F.3d at 510; *Ledbetter*, 35 F.3d at 1071.

B.

A criminal defendant's due process rights are violated if the prosecution or law enforcement officials investigating the case suppress evidence that is favorable to the accused and material to guilt or sentencing. *Jamison v. Collins*, 291 F.3d 380, 384-85 (6th Cir. 2002) (citing *Kyles v. Whitley*, 514 U.S. 419, 437-38 (1995)). Such a violation requires proof of three elements: (1) the evidence was favorable to the accused; (2) the evidence, intentionally or unintentionally, was suppressed by the government; and (3) resulting prejudice. *Jamison*, 291 F.3d at 385 (citing *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)). Prejudice (or materiality) is established on showing "there is a reasonable probability of a different outcome of the trial had the [materials] been available." *Id*. "A 'reasonable

-11-

probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682 (1985).

Tipton argues that the prosecution withheld four documents: (1) a January 17, 1991 Case Progress Report prepared by Maryville Police Detective McCulloch; (2) a February 1, 1991 Case Progress Report prepared by Detective McCulloch; (3) a February 15, 1991 investigative report written by FBI Special Agent Bentley; and (4) an April 9, 1991 investigative report prepared by an unidentified FBI Special Agent. The Tennessee Court of Criminal Appeals found these materials were neither exculpatory nor material:

> The Appellant [Tipton] submits that the exculpatory evidence referred to proves that the victim did not positively identify him during the first photo array. However, as previously stated, this evidence is circumstantial at best. At trial the victim testified that she saw the Appellant's face for a sufficient period of time to make an identification. Documentation introduced at trial overwhelmingly showed that the victim positively identified the Appellant during the first photo array. The victim was cross-examined extensively about her ability to make an identification of her second assailant. Furthermore, the victim assisted in a composite drawing prepared on January 9, 1991, prior to the photo array, which bore a remarkable resemblance to the Appellant. We find that the Appellant has not shown that the evidence was exculpatory to the Appellant or material to the defense. This issue is without merit.

*Tipton*, 2002 WL 1400058, at *12.

Tipton argues McCulloch's January 17, 1991 Report failed to refer to Tipton as the assailant, even though Tipton had been identified by Blair at the January 9, 1991 photo line-up eight days earlier, with McCulloch writing that Assistant United States Attorney Miek "wants corroboration along with this witness' statements." Even a cursory review of the January 17, 1991 Report shows that McCulloch and AUSA Miek were investigating possible federal charges against Davis, not Tipton. It is unremarkable that Tipton was not mentioned in the Report. Tipton argues McCulloch's

February 1, 1991 Report refers to a "second unknown subject" even though Blair had already identified Tipton as her second assailant. Reviewing the entire Report, Tipton is referred to four times by name, with McCulloch writing "Hubert Holden BCSO advised that one of his informants claims the second unknown subject in the kidnapping was Rodney Tipton." This Report, read in context, is likewise unremarkable. Tipton argues that Special Agent Bentley's February 15, 1991 investigative report simply refers to Davis' accomplice as "the unknown individual who got into [Blair's] vehicle, known only to her as 'ROAD DOG.'" The Report was transcribed on February 15, 1991, and reflects the contents of Bentley's January 25, 1991 interview with Blair. The "Road Dog" reference is made by Blair, who told Special Agent Bentley that "the unknown individual who got into her vehicle [was] known only to her as 'ROAD DOG.'" Tipton does not argue or cite record evidence to support a finding that *Blair* knew Tipton's name as of January 25, 1991. Blair testified that "they didn't give me names" at the January 9, 1991 photo line-up. Tipton asserts that the April 9, 1991 investigative report penned by an unidentified FBI Special Agent reads that an unidentified member of the Maryville Police advised that "while [redacted] had never clearly seen the second individual's face, [obscured] an adequate composite drawing which bore a remarkable resemblance to RODNEY HAMPTON." Read as a whole, this document is as incriminating as it is exculpatory. On *de novo* review, the four reports allegedly suppressed by the prosecution and investigating officers were not favorable to Tipton, and to the extent they were favorable, their non-disclosure did not result in prejudice that undermined confidence in the guilty verdicts. *Timmerman-Cooper*, 512 F.3d at 774; *Bagley*, 473 U.S. at 682; *Jamison*, 291 F.3d at 385. It was objectively reasonable for the state court to reach the same conclusion. *McAdoo*, 365 F.3d at 493.

C.

To prevail on a claim of ineffective assistance of counsel, the petitioner must show that his counsel's performance was deficient and prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Counsel's performance is considered deficient if it was objectively unreasonable under the totality of the circumstances. *Id*. at 688. Counsel's deficient performance is considered prejudicial if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. The Tennessee Court of Criminal Appeals found that Tipton failed to demonstrate any prejudice resulting from his trial counsel's performance. *Tipton*, 2002 WL 1400058, at \*7-\*11.

Tipton argues his trial counsel was deficient in failing to discover the reports that he argues were suppressed. Consistent with the analysis in Section III, B, the absence of these documents did not prejudice Tipton's defense. Tipton's argument that his trial counsel failed to object to "false evidence of prior bad acts" is based on Blair's testimony at trial that she overheard Tipton and Davis "talk[ing] like they had just broken out of jail . . . [and] about raping a woman in Georgia with a knife . . . ." Because Tipton's defense was one of misidentification, it was objectively reasonable for his counsel not to raise a Rule 404(b) objection that Tipton (as opposed to the real assailant) was being falsely implicated in prior bad acts of jail escape and rape. Tipton's argument that his defense counsel failed to object to the prosecutor's reference to his post-arrest silence is simply without basis in this record. The record does not contain a reference to Tipton's post-arrest silence. Tipton also asserts that his counsel's suggestion that Tipton stand on being identified by Blair at trial constituted ineffective assistance of counsel that prejudiced his defense. As Tipton argues, "even deliberate trial

tactics may constitute ineffective assistance of counsel if they fall outside the wide range of professionally competent assistance." *Martin v. Rose*, 744 F.2d 1245, 1249 (6th Cir. 1984). Considering defense counsel's explanation that "there was no secret that Ms. Blair had been referring for the last hour [of trial] to Rodney Tipton," counsel's admission in open court that "I had Mr. Tipton stand up," and the trial court's instruction to the jury that the prosecutor's referral to Tipton's act of standing did not constitute evidence, there is no reasonable probability that Tipton would have been acquitted but for counsel's tactical suggestion that Tipton stand upon being identified by Blair. *Strickland*, 466 U.S. at 694. It was objectively reasonable for the state court to find that Tipton suffered no prejudice as a result of being deprived of effective assistance of counsel. *McAdoo*, 365 F.3d at 493.

IV.

We affirm the district court's dismissal of the petition.